## MENZO W. FINN *vs.* WESTERN RAILROAD CORPORATION.

A judgment in a suit between consignor and consignee, for the price of goods destroyed in the freight house of a railroad, rendered in favor of the consignee on the ground that the property never passed to him, owing to an insufficient delivery to the railroad company as carriers, does not estop the consignor to maintain a suit against the company, as carriers, for neglect to forward the goods.

An action of contract against a carrier for the value of goods delivered to him for transportation, but which he neglected to forward, and which were destroyed in his hands, is not barred by the statute of limitations until six years after their destruction.

On the trial of an action against a railroad company for neglecting to forward to J. S. a lot of shingles, which were delivered at one of the principal stations of the road to the defendants' agent, without instructions how to forward them, except that they were marked with the initials of J. S., and that on one bunch in every six or eight the whole name of J. S. was written with a lumberman's pencil, the judge instructed the jury that, if the defendants' agent knew or "ought to have clearly known" that the shingles were sent to J. S., and received them with such knowledge, the defendants were liable. The only evidence on which the jury could have found that the agent "ought to have clearly known" that the shingles were so sent, independently of actual notice, which the agent denied, was, that, within the three preceding years, six or eight lots of shingles had been received at the same station, and while the same agent was in charge, from the consignor of the lot in question and consigned to J. S., and that these former lots were marked in the same way as the lot in question, and were accompanied with bills of lading containing the name and address of J. S. *Held,* that this evidence would not justify a finding that the

defendants' agent " ought to have clearly known " that the shingles were sent to **J S.** and that exceptions to the instruction, as misleading, should be sustained.

A carrier is not bound to forward goods to a person who claims to be the consignee, if they are not accompanied with any instructions or bill of lading, and the claimant produces no authority from the consignor for their delivery; although they are marked with the initials of the claimant's name.

CONTRACT against the defendants, as common carriers, for their failure to forward and deliver shingles to Joseph S. Clark, at Westfield. Writ dated June 28, 1867. The declaration alleged the delivery to the defendants, their neglect to forward, and the destruction of the shingles while in their hands.

At the trial in the superior court, before *Rockwell,* J., it appeared that the shingles were shipped by the plaintiff at Olean, in New York, on a canal boat, in accordance with an order from Clark, on May 13, 1861, and on the same day the plaintiff wrote to Clark from Olean, informing him of the shipment, and inclosing a bill of the shingles and a duplicate of the bill of lading, which were received in due course of mail; that the material part of the bill of lading, which was signed by the plaintiff as consignor, and by the master of the canal boat, was as follows: " Olean, May 13, 1861. Shipped for account of M. W. Finn, on board canal boat W. White, of Niagara, whereof James Smith is master for the present trip, as follows: 100 bunches 50 M of 18 in. sorted shaved shingles, marked ' J. S. C. extra.' 150 bunches 75 M of 18 in. No. 1, shaved shingles, marked ' J. S. C.' 360 bunches 90 M of 18 in. ex. sawed shingles, marked ' J. S. C. extra.' In good order, to be delivered in like order, without delay. to the Great Western Railroad Company or their assignees at Greenbush, N. Y. Consignee to pay freight on the delivery;" and that the shingles arrived at the freight house of the defendants at Greenbush on July 4.

The plaintiff testified " that the shingles were packed up in bunches to the number of about six hundred; that they were marked with stencil plate, in large letters, some ' J. S. C. extra, and some, ' J. S. C.'; and that there was no other mark on them excepting that, as they were delivered on board of the canal boat, he wrote with a lumberman's pencil, on about one bunch in six or eight of the whole lot, the name, ' J. S. Clark, Southampton,

Mass.' *   There was evidence tending to show that such marks of a lumberman's pencil are legible and not easily effaced, but it was not contended that there was any other mark on the shingles, or any document sent with them, indicating their ownership or destination.

Thomas L. Green, the defendants' agent at Greenbush, called as a witness, testified, against the plaintiff's objection, that " when the shingles were first brought to the freight house, he examined the bill of lading, and told the captain of the canal boat, there being no consignee upon the bill of lading, and no destination named, he would not receive them; but finally agreed with the captain, in order to accommodate him, that he would receive the shingles on storage; that he examined about one quarter of the bunches of the shingles, and found no marks upon them but the letters ' J. S. C. extra' and ' J. S. C.,' and not knowing where or to whom they were to be sent, concluded to hold them, and await developments;" that on the day on which the shingles were received he sent a letter to the plaintiff, informing him that the shingles, " consigned to this company, for somebody, we do not know who," had been received, and asking for the name and residence of the consignee.

The plaintiff testified that on June 6 he wrote in reply, stating that the shingles were for Joseph S. Clark, Southampton, Massachusetts, and requesting that they might be forwarded immediately.   But Green denied that he ever received this reply.

It appeared that, about June 8, Clark wrote to Green, requesting that, if there were any shingles. at Greenbush for him, they should be sent to Westfield ; and, on June 25, wrote again, asking if there were any shingles at Greenbush marked " J. S. C.," and requesting that, if there were, they might be forwarded to Westfield; that to this last letter Green replied the same day, " informing Clark that there were shingles at his freight house, marked as he described, and requesting him, if he was the owner, to send to him at Greenbush the bill of lading or bill of purchase," and that this letter was duly mailed, but from some cause did not reach Clark until July 6.   Green testified that

he had no means of identifying the shingles as Clark's before June 25.

It also appeared that " the rules of the defendants forbade the delivery of goods to strangers, unless they produced the receipt taken at the point of shipment, or bill of purchase, identifying the goods which were demanded : " and Green further testified that " the rule of the road was, where parties were unknown, to require a receipt, but, where parties were known, goods were frequently delivered without receipt, and were frequently delivered when there were only initials, and sometimes when there were no marks at all; and that he did not know Clark. It however appeared that some six or seven shipments of shingles had been made to Joseph S. Clark, between 1858 and 1861, which had been received at the station when Green was agent, the first one of which he testified to having seen, which bore the name of J. S. Clark, Westfield or Southampton, written with a pencil."

" In order to show that these goods were properly marked, and should have been forwarded at once after they were received at Greenbush, the plaintiff, against the objection of the defendants, was permitted to testify that, for a few years previous to the shipment of these shingles, he had shipped six or eight other lots to Clark at Southampton or Westfield, marked as these were marked, with the initials ' J. S. C.,' and his name and address, either at Westfield or Southampton, written with a lumberman's pencil on some of the bunches of each lot. Clark and Asa Parker, the defendants' freight agent at Westfield, testified to the same facts, and Clark also testified that, at the trials " of the suit brought by the plaintiff against Clark, (see 10 Allen, 479 and 12 Allen, 522,) which resulted finally in a verdict for the defendant, " he testified that with all the other shipments of shingles a bill of lading was sent, with his full name and residence, and that these several consignments reached their destination directly and without delay."

On July 5, 1861, the freight house of the defendants at Greenbush was burned by an accidental fire, and these shing es were destroyed.

The plaintiff stated that he did not claim to hold the defend-ants responsible in this action as warehousemen.

Upon this evidence, the defendants asked the judge to give the following instructions to the jury : " That, upon the whole evidence, the plaintiff was not entitled to recover; that if, pre-viously to June 27, 1861, the defendants were notified of the correct destination of these shingles, and before that time had refused or neglected for an unreasonable length of time to for-ward them, the plaintiff was not entitled to recover in this ac-tion ; that if the jury were satisfied that these shingles were properly marked, the plaintiff was not entitled to recover in this action; that if all the letters claimed to have been written by Clark to the agent of the defendants were received by him, and contained the statements sworn to by Clark, the defendants were not bound, upon these letters, to forward the shingles to him; and that unless the agent of the defendants received the letter of June 6, alleged to have been written by the plaintiff, the latter was not entitled to recover."

The judge declined to give these instructions as prayed for, but did instruct the jury that, upon the evidence in the case, the defendants could not avail themselves of the statute of limita-tions, but, unless the shingles were in the defendants' hands as common carriers, the plaintiff could not recover ; " that if there was no way-bill or bill of purchase, or description of any kind, brought with the shingles, nor marks upon them except the ini-tials ' J. S. C.,' with some bunches marked ' J. S. Clark, South-ampton,' the defendants were not bound to forward them if there was no evidence of the previous carriage of similar goods marked in the same way ; but that the plaintiff contended, and had offered evidence tending to prove, that for several years goods of the same kind, similarly marked, had been sent in the same way, and forwarded to Westfield, to Clark, the consignee of these goods ; that he had a right to offer such testimony, and if the jury were satisfied upon the whole evidence that the defendants' agents knew, or ought to have clearly known, that they came from the plaintiff at Olean, and were by him sent to Clark at Westfield or Southampton, and they received them with such knowledge,

the jury would have a right to find that the defendants held the goods as common carriers; but that the defendants contended that the shingles were accompanied by no papers of any kind, and were only marked on each bunch 'J. S. C.,' and that the freight agent told the master of the boat that he would not take them as a common carrier, but would only take them in storage; and that, if this was proved, then the defendants were warehousemen, and not common carriers; and remained warehousemen until the time of the fire, unless the plaintiff proved that the plaintiff or somebody in his behalf had informed the defendants' agents of the consignee, his name and place of business." The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*G. Wells*, for the defendants.

*W. G. Bates & M. B. Whitney*, for the plaintiff.

WELLS, J.* It is contended that, if the goods were shown to have been properly delivered to the defendant, so as to create the liability of a common carrier, they thereby became the property of Clark, the consignee; and so it would result that the action cannot be maintained by Finn. This seems to have been the point upon which the case of *Finn* v. *Clark*, 10 Allen, 479; *S. C.* 12 Allen, 522, was decided. That case settled the fact that, as between Clark and Finn, the title to the property remained in Finn. But the defendant was not a party to that suit, and cannot set it up in this action as an estoppel against Finn, upon the question of such delivery.

The defendant also contends that, upon the evidence and instructions to the jury, the verdict must have been rendered upon the ground that the defendant had proper means of knowing the destination of the goods, and that there was a neglect to forward them within a reasonable time, and so a breach of the contract, more than six years before the date of the writ. If this were so, the right of action which would thereupon accrue would be only for the recovery of such damages as resulted from the delay of transportation. The right to recover the whole value of the property, which is the foundation of this action,

---

* COLT, J., did not sit in this case.

did not accrue, if at all, until the property was destroyed by fire, within six years before the date of the writ.

It is conceded that the defendant is not liable in this action unless chargeable as a common carrier. The receipt of the goods, without proper instruction or information as to their destination, would not impose upon the defendant any duty as a carrier. No such instruction or information was received from the mas· ter of the vessel by which the goods were brought to the defend ant, nor from the bill of lading. The name and residence of Clark, written " with a lumberman's pencil, on about one bunch in six or eight of the whole lot" of bunches of shingles, did not appear to have been pointed out to the defendant's agent, nor seen by him; and the court below held that it would not be sufficient to make the defendant responsible. But the instruc- tions given to the jury authorized them to find that the defend- ant received the goods as a common carrier, if they were " sat· isfied upon the whole evidence that the defendant's agents knew· or ought to have clearly known that they came from the plain- tiff at Olean, and were by him sent to Clark at Westfield, or Southampton, and they received them with such knowledge." The only evidence to which this instruction applies consisted of testimony to the effect " that, for a few years previous to the shipment of these shingles, he (Finn) had shipped six or eight other lots to Clark at Southampton or Westfield, marked as these were marked, with the initials ' J. S. C.' and his name and address, either at Westfield or Southampton, written with a lumberman's pencil on some of the bunches of each lot." It may be inferred that in such previous instances the freight was accompanied by proper way-bills disclosing its destination. The bill of exceptions states that Clark testified that, at the trials in the case of *Finn* v. *Clark,* " he testified that with all the other shipments of shingles a bill of lading was sent, with his full name and residence." If so, the fact that freight had been promptly and safely forwarded when properly directed did not tend to show that the defendant was in fault for not forwarding freight without such directions. Neither would it properly estab-

.ish fault on the part of the defendant, that the agent, Green, did not remember the previous transactions, so as to know that these packages marked "J. S. C." and "J. S. C. extra" were intended for Clark, at Westfield or Southampton. From the instructions given, we apprehend that the jury may have been led to find that, if Green did not know that the goods were so intended to be sent, he "ought to have clearly known" it.

It is contended by the plaintiff that the freight agent had the means of ascertaining the proper destination of these goods from the books of the corporation, which contained the record of the previous transactions, and therefore was guilty of neglect in not doing so. Assuming that the entries upon the books would have shown all the facts in relation to the previous transactions, we think it would be imposing too strict an obligation upon the carrier to require such an investigation of past transactions, to supply the want of proper directions upon freight, occasioned by the neglect or carelessness of the consignor. The suggestion of any connection between the previous transactions and these packages involves a recollection of the former. With no other guide to the means of knowledge than the facts of this case indicate, we do not think that the agent, having charge of such an extensive business as that of the defendant at Greenbush, was bound to undertake such an investigation. A consignor, who neglects to give proper directions for the transmission of his goods, has no right to expect that the carrier will take the responsibility of investigating the history of his business in order to ascertain his probable intentions in regard to the particular consignment. The carrier has the right to wait, and hold the goods on storage until he receives the proper directions, before he undertakes the severe obligations of that service. If the defendant's agent did not know that the goods were intended for Clark at Southampton, and did not see the full direction written in pencil upon some of the bunches of shingles, we think the evidence would not warrant the jury in finding that he "ought to have clearly known" it; and therefore that the instructions. which authorized the jury to find a verdict against the defendant on that ground were erroneously given.

If the plaintiff's letter of June 6 had been received, the defendant would be guilty of neglect in not forwarding the goods within a reasonable time thereafter. But, as there are other grounds upon which the verdict may have been rendered, we cannot assume that the jury found that it was received, contrary to the positive testimony of Green.

The defendant was not bound to act upon the letters from Clark, without the exhibition of his " bill of lading or bill of purchase." The carrier is entitled to have some authority or direction from the consignor himself, to justify his delivery to another. If none such accompanies the goods, he is not bound to take the risk of delivery to any one who does not produce evidence of his title or authority from the consignor. Without such evidence, in one form or the other, the defendant could not be required to undertake the transportation for the purpose of such delivery.    .      .    *Exceptions sustained.*