## Case No. 1,573.

### BLUM et al v. The CADDO.

### [1 Woods, 64.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1870.

SALE—DELIVERY TO CARRIER—LIABILITY OF CARRIER FOR LOSS — STOPPAGE IN TRANSITU—CONTRACT OF AFFREIGHTMENT—EFFECT.

1. When B., F. & Co., in New Orleans, sold goods to G. D., in Jefferson, Texas, on credit, and charged the price against G. D. on their books, and delivered the goods for transportation to a common carrier, directed to G. D., and consigned to S. & P., at an intermediate port: Held. that B., F. & Co. could not maintain an action against the common carrier for the loss of the goods.

2. In such a case the right of stoppage in transitu in the vendor does not affect the right of property in the vendee.

3. A vendor in making a contract of affreightment with a common carrier acts as the agent of the vendee, although the vendee may be a stranger to the carrier.

[Cited in Hobbie v. Smith, 27 Fed. 662.]

[See The Venus, 8 Cranch (12 U. S.) 253; The Frances, Id. 359; The Mary and Susan, 1 Wheat. (14 U. S.) 25; Daniels v. McCabe, Case No. 3,567; Audenreid v. Randall, Id. 644; The M. K. Rawley, Id. 9,-679.]

[Appeal from the district court of the United States for the district of Louisiana.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[In admiralty. Libel by Blum, Frank & Co. against the steamer Caddo for failure to deliver goods shipped. Dismissed.]

Geo. W. Race, for libellants.

R. H. Marr, for claimants.

WOODS, Circuit Judge, stated the case and delivered the opinion of the court.

The libel alleges, that on or about the 12th of September, 1868, the libellants shipped at New Orleans, on board the steamer Caddo, seven cases and one bale of dry goods to be conveyed to Shreveport, Louisiana, and there delivered to Stacy & Poland, consignees; that the steamer failed to deliver a part of the goods, amounting in value to $963.74, which sum, together with the freight, insurance and charges upon said goods amounts to $1,127.54, for which last named sum with interest and costs the libellants ask a decree against the Caddo. A. A. Barnes and Thomas Knee intervene as sole owners and file an answer. The proof shows that the goods were sold on credit by the libellants, who were merchants in New Orleans, to G. Dreyfus, who was a merchant at Jefferson, Texas, and charged to him on books of libellants. The goods were shipped according to the orders of Dreyfus, marked "G. D., Jefferson, Texas," and consigned to the care of Stacy & Poland of Shreveport, which was an intermediate port. The goods were insured by libellants in the Louisiana Mutual Insurance Company, and the premium charged to Dreyfus. The freight was not paid by libellants but by Stacy & Poland of Shreveport, who were agents of Dreyfus for that purpose and also to receive and forward the goods to Jefferson, Texas.

Upon this state of facts the claimants say that libellants had no property in the goods lost and, therefore, cannot maintain this suit. The question whether the consignor or consignee has the right of action in cases where goods consigned to a common carrier are lost or damaged has been somewhat unsettled by conflicting decisions both in England and this country. The decided weight of authorities is now in favor of the proposition that the person having the right of property and the right of possession is the one to sue, whether consignor or consignee. Tindall v. Taylor, 28 Eng. Law & Eq. 210; Potter v. Lansing, 1 Johns. 214; Dawes v. Peck, 8 Term R. 330; Dutton v. Solomonson, 3 Bos. & P. 582; Brown v. Hodgson, 2 Camp. 36; Ludlow v. Bowne, 1 Johns. 1; De Wolf v. New York Firemen Ins. Co., 20 Johns. 214; Price v. Powell, 3 Coms. [3 N. Y.] 322; Everett v. Saltus, 15 Wend. 474; Ilsley v. Stubbs, 9 Mass. 65; The Venus, 8 Cranch [12 U. S.] 253; The Merrimac, Id. 317; The Frances, 9 Cranch, [13 U. S.] 183; Brandt v. Bowlby, 2 Barn. & Adol. 932. The property in the goods shipped is considered to be prima facie in the consignee, and he will be entitled to sue in the absence of proof to the contrary. Lawrence v. Minturn, 17 How. [58 U. S.] 100; Ogden v. Coddington, 2 E. D. Smith, 317; Tronson v. Dent, 36 Eng. Law & Eq. 41; Coleman v. Lambert, 5 Mees. & W. 502. In the case of Evans v. Marlett, 1 Ld. Raym. 271, it was held: "If goods by bill of lading be consigned to A., A. is the owner and must bring action against the master if they are lost. But if the bill be special, to be delivered to A. to the use of B., A. ought always to bring the action for the property is in him, and B. has only a trust per totam curiam."

A delivery to an agent for and on behalf of his principal will transfer the property equally with a delivery to the principal himself. This is an elementary rule in the transfer of property, and the master of a vessel is considered the agent of the consignee. Per Kent, C. J., in Ludlow v. Bowne, 1 Johns. 15. So in Godfrey v. Furzo, 3 P. Wms. 185, the like rule was laid down by Chancellor King, who said, that on the delivery of goods to the master of a ship the property immediately vested in the consignee, who was to run the risk of the voyage. So in Snee v. Prescot, 1 Atk. 248, Lord Chancellor Hardwicke said that if goods are delivered to a carrier to be delivered to A., and they are lost, the consignee only can bring the action, which showed the property to be in him, and he said it was the same when goods were delivered to the master of a vessel, though he allowed at the same time the right of the consignor to stop in transitu.

From these authorities, the following principles may be considered as established: 1. That the right to sue is in the person who has the right of possession and the right of property. 2. That prima facie the consignee is the owner and entitled to sue. 3. That a delivery of goods to the common carrier is a delivery to the consignee. 4. That when the consignee is the owner or agent of the owner he and not the consignor must sue. In the case on trial the proof shows that the goods were sold by libellants to Dreyfus and their value charged to him on their books. They were delivered to the carrier, marked with the initials of Dreyfus and with the place of his residence, Jefferson, Texas, and consigned to Stacy & Poland at Shreveport, an intermediate port. They were insured by libellants, but the premium paid was charged by them to Dreyfus. It seems to me there is nothing wanting to a complete transfer of the property from libellants to their vendee. Here is a sale, a delivery to the common carrier, the agent of the vendee, and the goods are shipped at the risk of vendee. The only right in the goods left in libellants, after their delivery to the common carrier, is the right of stoppage in transitu. The effect of this right upon the question under

discussion is stated by Kent, C. J., in Ludlow v. Bowne, 1 Johns., supra, as follows: "The right of stoppage in transitu, as between vendor and vendee, came from the court of equity. The first case in the books is that of Wiseman v. Vandeputt, 2 Vern. 203, in chancery. On the first hearing the chancellor ordered an action of trover to be brought to try whether the consignment vested the property in the consignee, and it was then determined in a court of law that it did. But equity thought it right to interpose and give relief, and since that time this new rule of stoppage in transitu has been admitted in courts of law as well as equity, between consignor and consignee, in case of insolvency of the latter and before actual delivery. This rule is not considered however as altering the right of property which, by the old rule of law, vested in the consignee upon delivery to the carrier, for him and at his risk. The delivery to the carrier," the C. J. goes on to say, "is a constructive delivery to the vendee and the goods are considered in the possession of the vendee the instant they pass out of the possession of the vendor, to every other purpose but that of defeating the equitable right of reclaiming the property upon the insolvency of the vendee."

The same doctrine is fully recognized in Coxe v. Harden, 4 East, 211, in which the court says that "a delivery to the master of a general ship, under a consignment, is a delivery to those to whom and for whose use the goods were sent, and at whose risk they were during the passage; and that the property was subject only to be diverted by the shippers' right of stoppage in transitu, which was deemed a species of jus postliminii." See, also, Hardwicke, Chancellor, in Snee v. Prescot, 1 Atk., supra. So we may consider it settled that the right of stoppage in transitu remaining in the vendor does not affect the right of property in the vendee. The title to the property remains in the vendee until divested by the exercise of the right of stoppage in transitu. But libellants claim that they are the proper parties to sue because they made the contract of affreightment with the common carrier, to whom the vendee was a stranger and who entered into no contract with the carrier. But it has been repeatedly held that the vendor in making the contract with the carrier acts merely as the agent of the vendee. Dawes v. Peck, 8 Term R. 330; Coates v. Chaplin, 2 Gale & D. 552; Dunlop v. Lambert, 6 Clark & F. 600. I am of opinion on the authorities cited that the libellants have not the right to sue under the facts in this case, and while according to some of the authorities, the suit should have been brought by Stacy & Poland, and according to others by Dreyfus, the owner; yet the great weight of authority is that the right of action is in one or the other of them and not in the libellants. The libel must therefore be dismissed at costs of libellants. Decree accordingly.