HOBBIE and others *v.* SMITH and others.[1]

SAME *v.* MICHIGAN PIPE CO.

*(Circuit Court, N. D. New York.  May 10, 1886.)*

1. PATENTS FOR INVENTIONS — ASSIGNMENT, RESERVATION IN — ACTION BY ASSIGNEE FOR INFRINGEMENT.

Where the owner of a patent assigns for certain states, but reserves to himself the right to use the invention in one of said states in common with his assignee, such reservation will not defeat an action by the assignee alone for an infringement of the patent in the states not covered by the reservation.

2. SAME—CONSTRUCTION OF ASSIGNMENT.

But it would not be an unreasonable construction of such an assignment to say that the patentee, having, by the usual words of transfer, divested himself of all right, title, and interest in the patent, desired to provide that he should be permitted to use the patent in the territory covered by the reservation without subjecting himself to an action for infringement.

3. SAME—DEFENSE THAT TITLE IS DEFECTIVE MUST BE PLEADED.

Where alleged defects of title might have been corrected had plaintiff been notified prior to the trial, *held* that, under the provisions of the New York Code, it was the duty of the defendants to apprise the plaintiffs, either by demurrer or answer, of this defense.

4. SAME—ATTACKING PATENT.

An attack on the validity of a patent comes with poor grace from one who has paid large sums of money for its privileges, and built up a flourishing business by asserting that his goods were made under it, and who has maintained that it was good and valid in law, even though when sued as a trespasser he may not be technically estopped to dispute its validity.

5. SAME—EFFECT OF ACQUIESCENCE BY PUBLIC.

In such a case, and where, although the invention was of great value, there was a full acquiescence on the part of the public in the validity of the patent, the court should scrutinize evidence against its validity with the utmost care.

6. SAME—PATENTABLE NOVELTY.

The patent was for a wooden pipe, which was rendered impervious to water or gas by coating it inside and out with a composition of coal-tar and sawdust. It was shown that pitch was known as a preservative of wood long prior to the date of the patent; that it had been used as a coating for wooden

---

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

pipes; that tarred pipes rolled in sand were old; and that sawdust had been known as an absorbent of sticky substances. But sawdust and tar had never before been combined in the manner described in the patent, and the patentee made tarred wooden pipe a practical reality. *Held*, that although patentee's method was not a great discovery, it was a valuable improvement, entitling him to the reward of an inventor.

7. SAME—INFRINGEMENT.

The specification described the coating of wooden pipes with a composition of coal tar mixed with sawdust, and applied while hot, and suggested that "the pipes, after having been coated with tar, and before the said tar has set, may be rolled in sawdust." The claim was for "the combination of a composition of hard boiled tar and sawdust with wooden pipes, applied in the manner and for the purpose set forth." *Held* that, referring to the description for a full meaning of the claim, the patent was not limited to the coating of the pipes with the composition, but covered the method of coating them with tar, and then rolling them in sawdust.

8. SAME—EQUIVALENTS.

The defendants in this case used auger borings instead of sawdust in coating their pipes. The two were so nearly identical that the difference was hardly discernible, one being an exact equivalent of the other. *Held*, that they infringed.

9. SAME—SALE OF PATENTED ARTICLE, VENUE OF.

Defendants manufactured patented goods in Michigan, for which state they owned the patent. Some of their goods they sold and delivered within their own territory, the purchaser taking them into the territory owned by plaintiffs under the same patent. In other instances they sold goods which they agreed to deliver within plaintiffs' territory. *Held: First*, that where the delivery of the goods was made in Michigan, the venue of the sale was there; *second*, that where, by express agreement, the defendants contracted to convey the goods to plaintiffs' territory, and there deliver them, the sale must be regarded as made in said territory, and that such sales were an infringement upon plaintiffs' exclusive rights.

10. SAME—LAWFUL WHERE MADE, LAWFUL EVERYWHERE.

The grantee of a particular territory under a patent, has the right to sell in that territory, and such right cannot be curtailed, though the purchaser take the goods beyond the prescribed limits; and this is so, even though the vendor knows that the purchaser intends so to act.

11. SAME—DAMAGES—LOSS OF SALES.

The evidence showed that the sales made by defendants in plaintiffs' territory would have been made by plaintiffs if defendants had not interfered, and that plaintiffs were compelled to sell their goods at a reduced price by reason of the defendants' competition. *Held*, that the profits which plaintiffs would have realized, had they made the sales, were a fair measure of damages; and that the reduction in plaintiffs' price caused by defendants' unlawful sales should also be taken into consideration.

At Law. Tried by the court.

*James A. Allen* and *George Wing*, for plaintiffs.

*Benjamin H. Williams* and *Wells W. Leggett*, for defendants.

COXE, J. On the twenty-second of November, 1864, letters patent No. 45,201 were issued to Arcalous Wyckoff, of Elmira, New York, for an improvement in gas and water pipes. In the specification the patentee declares:

"This invention consists in the application or use of a composition of sawdust and hard boiled tar in combination with wooden pipes, in such a manner that, by coating said pipes on the inside and outside with the composition, the wood is rendered perfectly impervious to water or gas, and preserved against the injurious influence of moisture from inside or outside. * * * I boil coal or gas tar to such a consistency that it will become hard when cooled,

and mix it with sawdust in about the following proportions: coal-tar ten parts, sawdust one part; and this composition, while hot, I apply to the pipes,—both inside and out for gas, and outside only for water. Instead of mixing the coal-tar with sawdust previous to applying the composition to the pipes, the coal-tar, after having been boiled, may be applied first, and the sawdust sprinkled over it; or, instead of this, the pipes, after having been coated with tar, and before the said tar is set, may be rolled in sawdust to take up enough to prevent the pipes from sticking together when piled up, or to the hands when handled, before the composition is perfectly hard."

The claim is as follows:

"The combination of a composition of hard boiled tar and sawdust with wooden pipes, applied in the manner and for the purpose set forth."

Plaintiffs were, from May 31, 1876, until November 22, 1881, the date of its expiration, assignees under the patent for New York, New England, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, West Virginia, and the District of Columbia. During the latter part of this period the defendants, first as copartners, and afterwards, with some changes, as a corporation, were assignees for Michigan and other states, having the right to make, use, and sell the patented article within the assigned territory. The defendants have sold large quantities of the patented pipe to parties residing within the territory assigned to the plaintiffs, and it is to recover damages for this alleged infringement that these actions are brought.

The defenses are—*First*, that the plaintiffs' title is defective; *second*, that the patent is void for want of novelty and invention; *third*, that defendants do not infringe, because the pipe manufactured by them is not covered by the claim of the patent; and also for the reason that all their sales were made at Bay City, Michigan, where they had a right to sell.

The objections urged against plaintiffs' title, though they show much ingenuity, are formal and technical in character. It is said that the patentee is a necessary party for the reason that the assignment from him dated July 31, 1874, contains these words: "Excepting and reserving, however, the right of said Archalous Wyckoff to use said patents in common with said I. S. Hobbie, Miles Ayrault, and J. A. Hobbie in the state of New York from and after April 1, 1877." It will be seen that even if the interpretation contended for by the defendants is placed upon this clause, namely, that the patentee still retains the legal title, it could not defeat the action, for the reason that the reservation relates only to the state of New York. As to the other states the assignment is absolute and perfect. But it would seem to be not an unreasonable construction to say that the patentee having, by the usual words of transfer, divested himself of all right, title, and interest in the patent, desired to provide that, after a certain date, and in a limited field, he should be permitted to use the patent without subjecting himself to an action for infringement. The legal title is transferred to the assignees; a personal right to use is retained by the assignor. The answer is silent as to

this objection, and also as to the other alleged defects of title, many, if not all, of which could have been corrected had the plaintiffs been notified prior to the trial. I am inclined to think, therefore, that, under the provisions of the state Code, it was the duty of the defendants to apprise the plaintiffs, either by demurrer or in the answer, of their position in this regard.

Although the defendants, sued as they are as trespassers, may not be estopped to dispute the validity of the patent, it is thought that the accusations against it come with poor grace from those who were willing to pay large sums of money to be admitted to its privileges; who have built up a flourishing business, and made large gains, by asserting that the pipe manufactured by them was made pursuant to its specifications; and who, during its life, maintained, both indirectly and by positive assurance, that it was good and valid in law. These considerations, together with the significant fact that there was a full acquiescence on the part of the public,—that although the patent was regarded as of great value, no one ever disputed its validity,—should lead the court, in an action of this character, to scrutinize with the utmost care the evidence now offered to overthrow it. The defendants presented some proof tending to show that the patented pipe was used prior to the date of the patent at Elmira, Corning, and other places in the southern part of the state of New York. The burden is upon them to establish this defense beyond a reasonable doubt. *Cantrell* v. *Wallick*, 6 Sup. Ct. Rep. 970, (April 12, 1886,) and cases there cited. It suffices to say that, tested by this rule, the proof is insufficient to overthrow the presumption of validity arising from the patent itself.

The further testimony upon this branch of the case may be summarized as follows. It was shown that pitch was known as a preservative of wood long prior to the date of the patent; that it had been used as a coating for wooden pipes; that tarred pipes, rolled in sand, were known as early as 1851; and that sawdust had been known as an absorbent of sticky substances. The field was therefore a narrow one; but the fact remains that sawdust and tar had never before been combined in the manner described in the patent. Wyckoff took a forward step in the path of invention. He made tarred wooden pipe a practical reality. His was not a great discovery, but it was a valuable improvement, entitling him to the rewards of an inventor.

The proposition that the defendants do not infringe because the method adopted by them of rolling the tarred pipes in sawdust is not covered by the patent, cannot be maintained. It is argued that the claim relates only to the coating of pipe with the composition or mixture of hard boiled tar and sawdust. Such a construction would be illiberal and narrow in any case, and especially so when demanded by those who have for years asserted that their pipe was made pursuant to the specification, and protected by the claim, of the patent.

The claim is for "the combination of a composition of hard boiled tar and sawdust with wooden pipes, applied in the manner and for the purpose set forth." Referring to the description for a full meaning of the claim, (*Reed* v. *Chase*, 25 Fed. Rep. 94, 99,) it will be seen that "the pipes, after having been coated with tar, and before the said tar has set, may be rolled in sawdust." This is precisely what the defendants do. The claim, fairly construed, covers this manner of applying the tar and sawdust to the pipes. Neither can the defendants escape the charge of infringement because they use auger borings instead of sawdust. The proof is clear that the two are so nearly identical that the difference is hardly discernible. Surely, one is an exact equivalent for the other.

But the most difficult question involved in this controversy remains to be answered. Were the sales made in Michigan, and had the defendants a right to make them there, knowing that the pipe was to be used in the plaintiffs' territory? The defendants were engaged in business at Bay City, Michigan, having their manufactory at that place. The plaintiffs' manufactory was at Tonawanda, New York. The defendants knew this, and also that the plaintiffs' territory embraced New York, New England, and other states. As to some of the larger transactions, it cannot be disputed that the agreement for the sale was made at Bay City, and that the delivery upon the cars or boat at that place was a delivery to the purchaser. In no two instances were the transactions precisely similar; but it may be said, generally, that, in those cases where the parties had not already a full knowledge of the subject by reason of previous dealings, the first step was an inquiry from the purchaser as to the quality of the pipe, the price, the rate of freight, etc. This was followed by a letter from the defendants inclosing a price-list, and stating the proposed discount. Then followed an order for the pipe or casing. The order was accepted, and the merchandise loaded upon the cars or boat at Bay City. It was paid for by check or draft mailed to the defendants. In some instances the agreement was that the pipe should be delivered to the purchaser at Tonawanda, Buffalo, or other places in plaintiffs' territory. In the case of the sale to Richard Savage, the defendants agreed, in writing, to deliver the property at Wheeling, West Virginia, and Savage wrote from Wheeling accepting the offer; so that, not only was the contract made at Wheeling, but the pipe was delivered there. Regarding the sales made to Garden City and to the Springfield Gas-light Company, the defendants agreed to fill the order for "$20 per M. feet, delivered at Tonawanda or Buffalo." The defendants paid the freight to Buffalo, or deducted it from their bill. As to the Ocean Oil Company, the agreement was to deliver in New York at one dollar per lineal foot. Regarding the order of the Auburn Steam-heating Company, dated July 19, 1879, I cannot find that the proposition therein contained was accepted by the defendants. Although some of the correspondence is almost illegible, it would seem

that the final agreement was that the property should be delivered at Bay City, the defendants acting for the purchaser only to procure a favorable freight rate through to Auburn. Where the pipe or casing was delivered to the carrier at Bay City for and on account of the vendee, there was a sale with no conditions. The minds of the parties met at Bay City, and the transaction was completed there. Nothing more was required. The title passed when the goods were delivered to the carrier. The carrier was the agent of the vendee, and not of the defendants. Where a contract is made for the purchase of goods, and nothing remains to be done by the vendor, the property passes immediately, so as to cast upon the vendee all future risks. Had there been a condition precedent to be performed in the plaintiffs' territory, the rule would be otherwise. The case in hand differs in this respect from the case of *State* v. *O'Neil,* 2 Atl. Rep. 586. There the goods were sent C. O. D. from New York to Vermont. The express company was made the agent of the vendor, and the vendees acquired no right to the property until they paid for it; precisely, in legal effect, as if the vendor had sent his clerk or had himself carried the goods into Vermont, and had there delivered them upon receiving the price. The distinction between such a transaction and the sales of pipe, where the delivery was made at Bay City, is clearly drawn in *U. S.* v. *Shriver,* 23 Fed. Rep. 134, where the court, at page 136, says:

"An order from a person at Fairfield to the defendant at Shawneetown for two gallons of liquor, to be shipped to Fairfield C. O. D., is a mere offer, by the persons sending such order, to purchase two gallons of liquor from the defendant, and pay him for it when he delivers it to him at Fairfield; and a shipment by the defendant according to such order is practically the same as if the defendant had himself taken two gallons of liquor from his store in Shawneetown, carried it in person to Fairfield, and there delivered it to the purchaser, and received the price of it. It would be different if the order from Fairfield to the defendant was a simple order to ship two gallons of liquor by express to the person ordering, whether such order was accompanied by the money or not. The moment the liquor, under such an order, was delivered to the express company at Shawneetown it would become the property of the person ordering, and the possession of the express company at Shawneetown would be the possession of the purchaser,—the sale would be the sale at Shawneetown; and if it were lost or destroyed in transit, the loss would fall upon the purchaser."

The delivery to the carrier is a constructive delivery to the vendee, and the goods are considered in his possession when delivered to the carrier for him, and at his risk; but if not delivered for him,—if delivered for the vendor; if by the express terms of the contract the vendee has nothing to do with the carriage of the property; if he is under no obligation regarding the goods until they are delivered,— it follows that the sale is not completed till they are delivered and accepted. When goods are sent upon the account and risk of the shipper, the delivery to the carrier is a delivery to him as agent of the shipper, and not of the consignee. *Shuenfeldt* v. *Junkermann,*

20 Fed. Rep. 357; *Grove* v. *Brien*, 8 How. 429; *Terry* v. *Wheeler*, 25 N. Y. 520, 525; *Olyphant* v. *Baker*, 5 Denio, 379, 382; *The Merrimack*, 8 Cranch, 317; *Acraman* v. *Morrice*, 8 C. B. 449; *Ludlow* v. *Bowne*, 1 Johns. 1; *Evans* v. *Marlett*, 1 Ld. Raym. 271; *Vale* v. *Bayle*, 1 Cowp. 294; *Thompson* v. *Cincinnati, W. & Z. R. Co.*, 1 Bond, 152; *Blum* v. *The Caddo*, 1 Woods, 64; *Andrews* v. *Durant*, 11 N. Y. 35; *Mucklow* v. *Mangles*, 1 Taunt. 318; *The Frances*, 8 Cranch, 418; *Jones* v. *U. S.*, 96 U. S. 24; Benj. Sales, §§ 317–320; Story, Sales, § 306.

These authorities establish two propositions as applicable to the cause in hand: *First,* that where the delivery of the goods was made at Bay City, the venue of the sale must be held to be in Michigan; and, *secondly,* where, by express agreement, the defendants contracted to convey the property to New York, Massachusetts, and West Virginia and there deliver it, the sale must be regarded as consummated in the plaintiffs' territory. For this infringement there can be little doubt as to the plaintiffs' right to recover.

Regarding the remaining sales, the question is, can there be a recovery for pipe and casing sold at Bay City, the defendants knowing that it was to be used in the plaintiffs' territory? Upon this proposition there may be room for discussion as to what the law should be; there can be none as to what the law is. In *Adams* v. *Burke*, 17 Wall. 453, (at circuit, 1 Holmes, 40,) the question was sharply at issue, and the supreme court decided that a patented article, when rightfully bought, could thereafter be used anywhere; thus going a step further than is necessary in the case at bar; for here the action is not against the user, but against the seller, there being no pretense that the defendants ever used the pipe in the forbidden territory. Had the plaintiff in that case brought his action against Lockhart and Seelye, the merchants who sold the coffin lid in Boston, it is quite clear that there would have been no dissent in the supreme court. No case has been cited holding that the grantee of a particular territory is not at liberty to sell within that territory, and, having the right, it cannot be curtailed, though the purchaser takes the goods beyond the prescribed limits. This is so, even though the vendor knows that the purchaser intends so to act. See, also, *McKay* v. *Wooster*, 2 Sawy. 373. *Hatch* v. *Adams*, 22 Fed. Rep. 434, is an authority only for the proposition that the purchaser of patented articles from the grantee of an exclusive territorial right is not at liberty to bring them into the territory of another grantee, and there sell them in the course of trade.

Upon the question of damages, the rule contended for by the plaintiffs is that they are entitled to recover what they would have made had it not been for the defendants' unlawful action. Although stated largely from memory, it is thought that the evidence sufficiently establishes the fact that as to each of the sales made in their territory the plaintiffs would have received the orders had not the defendants

interfered. In some instances the negotiations were actually pending, and the contract about to be awarded the plaintiffs, when the defendants appeared and underbid them. The plaintiffs were also compelled, where they did furnish the pipe or casing, to sell at a greatly reduced price by reason of this competition; as in the Garden City order, for instance. The profits which they would have realized had they made the sales are therefore a fair measure of their damages; and if they were compelled to reduce their price by reason of unlawful sales by the defendants, that also should be taken into consideration.

It follows that the plaintiffs are entitled to recover $3,825 in the suit against Henry B. Smith and others, and $925 in the suit against the Michigan Pipe Company, with costs.