UNION FREIGHT RAILROAD COMPANY vs. JOHN N. WINKLEY
& another.

Suffolk.   November 29, 1892. — May 19, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Carrier — Freight Charges — Consignor and Consignee.*

A. sold to B. a car-load of ice at a certain price per ton, delivered on the cars.  A
railroad corporation, from whose railway a side track had been constructed to
A.'s icehouses, was informed by A. that there was a car of ice on the side track
for B., and was given his address, but no other instruction or information.  The
corporation thereupon made a way-bill of the car to B., and also a bill of the
freight charges, which it sent to B., and hauled the car to its destination and
delivered the ice to B., who did not pay the freight charges.  *Held*, that the
corporation could not maintain an action against A. for the freight charges.

CONTRACT, for the benefit of the Old Colony Railroad Com-
pany, for services rendered as a common carrier.   The case was
submitted to the Superior Court, and, after judgment for the
defendants, to this court, on appeal, on agreed facts, in sub-
stance as follows.

The plaintiff, at the occurrence of the events hereinafter men-
tioned, was a common carrier, having its usual place of business
in Boston, and operating a railroad between the stations of the
various railroads, including those hereinafter mentioned, which
have their terminal points in Boston.   The defendants were co-
partners dealing in ice under the name of Winkley and Maddox,
having a usual place of business in Boston, and in the year 1890
having part of their stock stored in icehouses on the shore of
Smith's Pond, in the town of Wolfborough, in the State of New
Hampshire.   In August, 1890, the defendants sold to N. M.
Merrick, of Plympton in this Commonwealth, a car-load of ice
at a certain price per ton delivered on the cars.   There was a
side track (constructed on private lands by parties interested in
the ice trade) from a railway operated by the Boston and Maine
Railroad, and running alongside of the icehouses of the defend-
ants, upon which track cars were pushed up by the Boston and
Maine Railroad and left to be loaded.   The defendants' servants
loaded the ice in a car thus left on the side track, and informed

the station agent at a station of the Boston and Maine Railroad about two miles distant that there was at the icehouses of the defendants a car of ice for " N. M. Merrick, Plympton, Mass.," giving the number of the car, and giving no other instruction or information. The Boston and Maine Railroad made a way-bill of the car to " N. M. Merrick, Plympton, Mass., via the Old Colony Railroad Company," and also a bill for the freight charges to Merrick, hauled the car to Boston, and delivered it to the plaintiff to be hauled to the Old Colony Railroad Company. The plaintiff hauled the car from the freight-yard of the Boston and Maine Railroad to that of the Old Colony Railroad Company, and delivered it to the latter company, paying to the Boston and Maine Railroad its freight charges and taking its bill to Merrick so paid and receipted. The Old Colony Railroad Company paid to the plaintiff the amount of the bill so paid to the Boston and Maine Railroad and the plaintiff's charges to Merrick for its freight, and sent to Merrick a bill of these charges and its own charges for transportation from Boston to Plympton, and delivered the ice to Merrick at Plympton. Neither Merrick nor any one else has paid these freight charges. The defendants thereafter claimed payment for the car of ice from Merrick, but payment has not been made. The route followed in transporting the car was the usual one between Wolfborough and Plympton, and the sum charged was a reasonable charge for the services rendered by the plaintiff in the transportation of the ice.

C. F. Choate, Jr., for the plaintiff.

W. E. Jewell, for the defendants.

FIELD, C. J. The plaintiff is the second in a line of three connecting railroads over which the ice was transported, and the freight due to the first two roads has been paid by the last. We assume, without deciding it, that the right of the plaintiff to maintain this action is the same as if it were the first road, and the freight had not been paid. With whom, then, did the Boston and Maine Railroad make the contract for transportation, and who promised that company to pay the freight? There was no express contract. The defendants, through their servants, might have contracted with the railroad to pay the freight, although as between themselves and Merrick he was bound to

pay it, but they made no such contract in terms.   A consignor of merchandise delivered to a railroad for transportation may be the owner and act for himself, or may be an agent for the owner and act for him, and this may or may not be known to the railroad company.   In the present case, the railroad company knew the name and residence of the consignee.

From the agreed facts, it appears that the title to the ice passed to Merrick when it was put on board the car, and that it was transported at his risk.   The doctrine of the courts of the United States seems to be that the property in goods shipped is presumably in the consignee, although this presumption may be rebutted by proof.   *Lawrence* v. *Minturn*, 17 How. 100.   *Blum* v. *The Caddo*, 1 Woods, 64.   In Dicey on Parties to Actions, 87, 88, the result of the English decisions is stated to be as follows:   " The contract for carriage is, in the absence of any express agreement, presumed to be between the carrier and the person at whose risk the goods are carried, i. e. the person whose goods they are and who would suffer if the goods were lost. . . . When, therefore, goods are sent to a person who has purchased them, or are shipped under a bill of lading by a person's order, and on his account, the consignee, as being the person at whose risk the goods are, is considered the person with whom the contract is made.   He is liable to pay for the carriage, and is the proper person to sue the carrier for a breach of contract."   And on page 90, n., " Where the consignor acts as agent of the consignee, but contracts in his own name, it would appear that either the consignor or the consignee may sue."   *Dawes* v. *Peck*, 8 T. R. 330.   *Domett* v. *Beckford*, 5 B. & Ad. 521. *Coombs* v. *Bristol & Exeter Railway*, 3 H. & N. 1.   *Sargent* v. *Morris*, 3 B. & Ald. 277.   *Dunlop* v. *Lambert*, 6 Cl. & Fin. 600. *Great Western Railway* v. *Bagge*, 15 Q. B. D. 625.   *Cork Distilleries Co.* v. *Great Southern & Western Railway*, L. R. 7 H. L. 269.   The cases generally are collected in Hutchinson on Carriers, §§ 448 *et seq.*, 720 *et seq.*   Most of the English cases were reviewed in *Blanchard* v. *Page*, 8 Gray, 281.   That was a case of the carriage of goods by sea under a bill of lading, and it was held that the bill of lading was a contract between the shipper and the ship-owner, and that, although it was shown that the shipper acted as agent of the consignees, who had bought and

paid for the goods before shipment, yet he could bring an action in his own name for breach of the contract of carriage unless he was prohibited by his principal, and it was said that he would be liable for the freight. In *Wooster* v. *Tarr*, 8 Allen, 270, it was decided that under a bill of lading in the usual form the shipper was liable to the carrier for the freight, although the bill contained the usual clause that the goods were to be delivered to the consignees or their assignees, " he or they paying freight for said goods," etc. It was said " to be the settled doctrine that a bill of lading is a written simple contract between a shipper of goods and the ship-owner ; the latter to carry the goods, and the former to pay the stipulated compensation when the service is performed." Both these cases were upon express contracts.

The strongest case for the plaintiff is *Finn* v. *Western Railroad*, 102 Mass. 283, which was upon an implied contract. In that case, one Clark had ordered shingles of Finn, who shipped them on his own account, under a bill of lading, on board a canal boat, to be delivered to " the Great Western Railroad Company. or their assignees at Greenbush, N. Y. Consignee to pay freight on the delivery." The shingles arrived by boat at the freight station of the railroad company at Greenbush, N. Y., and were described in the bill of lading as marked " J. S. C. extra," or " J. S. C." They were intended to be transported to Joseph S. Clark, Southampton, Mass., and were burned while in the freight-house by an accidental fire. Clark accepted and paid a draft drawn by Finn for the shingles, and, in a suit by Finn against him, pleaded the amount of the draft in set-off, and recovered the amount, on the ground that " the omission of the plaintiff [Finn] to forward the goods with proper directions as to the consignee and the place of delivery authorized the defendant [Clark] to treat the alleged sale as one never perfected, and to recover back the money paid upon the draft." *Finn* v. *Clark*, 10 Allen, 479 ; *S. C.* 12 Allen, 522. Finn then brought suit against the railroad company for its failure to forward and deliver the shingles to Clark. It was held that, although the case of Finn against Clark settled the fact that as between them the title to the property remained in Finn, yet the railroad company, not being a party to that suit, could not set up the judgment in it " as an estoppel against

Finn, upon the question of such delivery." *Finn* v. *Western Railroad*, 102 Mass. 283. At the second trial the plaintiff obtained a verdict, and the facts stated in the exceptions showed " that the title to the property had passed to Clark before the loss occurred, leaving in Finn at most only a right of stoppage *in transitu*," and it was in this aspect of the case that the opinion in 112 Mass. 524 was delivered. The contention of the plaintiff was, that the shingles had been delivered to the railroad company, with proper directions for their transportation, and that the defendant had neglected to transport them, whereby they had been burned. In the opinion the court says of the liability of a common carrier: " *Prima facie*, his contract of service is with the party from whom, directly or indirectly, he receives the goods for carriage; that is, with the consignor. . . . When carrying goods from seller to purchaser, if there is nothing in the relations of the several parties except what arises from the fact that the seller commits the goods to the carrier as the ordinary and convenient mode of transmission and delivery, in execution of the order or agreement of sale, the employment is by the seller, the contract of service is with him, and actions based upon that contract may, if they must not necessarily, be in the name of the consignor. If, however, the purchaser designates the carrier, making him his agent to receive and transmit the goods, or if the sale is complete before delivery to the carrier, and the seller is made the agent of the purchaser in respect to the forwarding of them, a different implication would arise, and the contract of service might be held to be with the purchaser." Although this was not a suit to recover freight, the principles on which it was decided are applicable to such a suit, and the effect of this and the previous decisions, we think, is that in this Commonwealth, when the vendor of goods delivers them to a railroad to be carried to the purchaser, although the title passes to the purchaser by the delivery to the railroad company, and the name and address of the consignee who is the purchaser is known to the company, the vendor is presumed to make the contract for transportation with the company on his own behalf, and is held liable to the company for the payment of the freight. This presumption, however, is a disputable one, and may be rebutted or disproved by evidence; and if the vendee has

ordered the goods to be sent at his risk and on his account, he also may be held liable, as the real principal in the contract. See *Byington* v. *Simpson*, 134 Mass. 169. But whether the presumption be one way or the other, it is a matter of inference from the particular circumstances of the case, and the question which is always to be considered is the understanding of the parties. See *Boston & Maine Railroad* v. *Whitcher*, 1 Allen, 497.

In the present case there was no bill of lading or receipt signed by the railroad company and accepted by the defendants. There was a way-bill, but it does not appear that the names of the defendants were in it. The freight charges were made in every instance to Merrick, the consignee, and the bills for freight were sent to him. These facts, and perhaps some others stated in the agreed facts, afford some evidence that the railroad company understood that Merrick was to pay the freight to the company. Upon an agreed statement of facts this court cannot draw inferences of fact, unless they are necessary inferences. *Old Colony Railroad* v. *Wilder*, 137 Mass. 536. The agreed facts in this case, we think, contain some evidence that the understanding of all the parties was that Merrick should pay the freight to the railroad company, and we cannot hold, as matter of law, that the defendants made a contract on their own behalf to pay the freight.          *Judgment affirmed.*