MENZO W. FINN *vs.* WESTERN RAILROAD CORPORATION.

A consignor who delivers goods to a carrier can maintain an action of contract against him for their loss, if there is no relation between the carrier and the consignee other than that which results from the carrier's possession of the goods; and in such action can recover the full value of the property, although it be the property of the consignee, if no action against the carrier has been commenced by the consignee; and will hold the proceeds in trust for the consignee's indemnity.

CONTRACT against the defendant corporation, as a common carrier, for its failure to forward and deliver shingles to Joseph S. Clark, at Westfield. Writ dated June 28, 1867. The declaration alleged the delivery to the defendant, its neglect to forward, and the destruction of the shingles while in its possession.

At the second trial in the Superior Court, before *Putnam*, J., after the decision reported in 102 Mass. 283, the plaintiff testified that May 9, 1861, he received at Olean, in the State of New York, a written order for a quantity of shingles, from J. S. Clark of Southampton, Massachusetts, to be forwarded to him at Southampton; that he filled the order by shipping the shingles ordered on board the canal boat M. White, at Olean; that when he shipped the shingles, he filled in triplicate the following shipping bill: "Olean, May 13, 1861. Shipped for account of M. W. Finn, on board Canal-boat M. White of Niagara, N. Y., whereof James Smith is Master for the present trip, as follows: 100 bunches, 50 M. of 18 in. Sorted Shaved Shingles, marked J. S. C. — Extra. 150 bunches, 75 M. of 18 in. No. 1 Shaved Shingles, marked J. S. C. 360 bunches, 90 M. of 18 in. Extra Sawed Shingles, marked J. S. C. — Extra. In good order, to be delivered, in like good order, without delay, to the Great Western Railroad Company or their Assignees, at Greenbush, N. Y. Consignee to pay Freight on the delivery at the rate of seventy-five cents per M. for Shaved Shingles, and sixty-two and one half cents per M. for the Sawed Shingles, $2.50 for towing less amount advanced Master, one hundred and fifty-two and fifty one hundredths dollars. M. W. Finn, Consignor. James Smith, Master. $152.50;" that one of the bills was sent by mail to Clark, one was given to the master of the canal-boat, and one was retained by him; that the

shingles were put up in bunches, and were branded upon the flat surface of each bunch ; that the brand upon some of the bunches was " J. S. C.," and upon the rest was " J. S. C., Extra ; " that upon about one bunch in six, he wrote with a lumberman's pencil, in letters plainly legible at a distance of twenty feet, the words " J. S. Clark, Southampton, Mass. ; " that the shingles were forwarded by canal from Olean to Greenbush, to be forwarded from thence by the Western Railroad to Clark ; that this was the usual mode of conveyance ; that between the years 1858 and 1861, he had sent upon similar orders 6 or 8 lots of shingles to Clark, to Westfield or Southampton, by the same routes, marked in the same manner as the lot in question ; that on June 6, 1861, he received from the agent of the Western Railroad a letter stating that the boat M. White had arrived at Greenbush with shingles, and asking for the name of the consignee ; that upon the same day he wrote a letter in reply, in the post-office at Olean, in the presence of the postmaster, stating that the shingles were for J. S. Clark, of Southampton, Mass., and requesting them to be forwarded to him at once ; that the letter was addressed to " The Agent of the Western Railroad Company, Greenbush, N. Y. ; " that he delivered the letter to the postmaster personally, in the post-office at Olean ; that by the ordinary course of mail, the letter would arrive at Greenbush on the next day ; that at the time of shipping the shingles he drew upon Clark for the price of them ; that the draft was duly accepted, and paid at its maturity, but whether it was paid before the fire or not, he did not know.

On his cross-examination, the plaintiff stated that with each of the prior lots of shingles, a shipping bill was given to the master of the boat, by which they were shipped, in which J. S. Clark, of Southampton or Westfield, was named as the person to whom the goods were sent, and a like bill was sent to Clark.

Benjamin Barker, a witness called by the plaintiff, testified that he helped the plaintiff mark the shingles as they were loaded on the canal-boat, at Olean, and that he marked, with a lumberman's pencil, on one bunch in every six or eight, the name and address " J. S. Clark, Southampton, Mass.," in letters that could be plainly read at a distance of twenty or thirty feet.

The deposition of the postmaster at Olean was read in evidence, who testified to the mailing of a letter by Finn, June 6, 1861, addressed to the agent of the Western Railroad, but that it was directed to East Albany, N. Y., and that his register of that day showed one letter sent to East Albany, N. Y., and that letter was mailed by the postmaster personally, and by him sent out of the office by the eastern mail.

It appeared that the proper address for the defendant's agent was either Greenbush or Albany; that East Albany was a village in the town of Greenbush, and the western terminus of the defendant's road, and that Greenbush was sometimes known as East Albany, and that letters addressed to East Albany had at different times been received at and delivered from the post-office at Greenbush, and that letters addressed to Green, the defendant's agent at East Albany, had been frequently received by him from the post-office at Greenbush.

The facts as to the shipment of the prior lots of shingles were also testified to by Clark, substantially as by the plaintiff, though he did not testify that he received shipping bills with them.

Asa C. Parker, the defendant's station agent at Westfield, testified that he knew of the receipt of the prior lots over the road, but that no bills of lading or any shipping bills accompanied any of these that he ever saw.

Thomas L. Green testified that he was agent for the defendant at Greenbush in 1861, and had been for some time prior to 1858, and was still its agent there; that no one but himself and George H. Penfield opened letters addressed to him or to the agent of the defendant at Greenbush or Albany, and that he never received or saw the letter of June 6, testified to having been sent by the plaintiff, and that up to the time of the fire he did not know the name of the consignee; that when the shingles in controversy arrived at Greenbush, the master of the canal-boat exhibited to him the shipping bill before mentioned, and there being no person named therein to whom the shingles were to be delivered, he declined to receive them until, at the solicitation of the master, he agreed to take them upon storage, and that he wrote the letter mentioned by the plaintiff as having been received by him, before

he agreed to take them on storage, and as soon as he saw the way-bill; that a day or two afterwards he examined the shingles and turned over one third of the bundles, so that he could see all sides of them, in order to see if there was a name of any consignee, or any direction upon them, and found no mark or direction upon them except " J. S. C.," and " J. S. C., Extra; " that he had no recollection of having seen either of the prior lots testified of by Finn and by Clark, that he had no recollection of any of the prior consignments, and only knew from the books that they were forwarded; that it at that time was, and still is, a custom of the defendant corporation that all freight coming to their road by way of the Erie Canal, as these shingles did, should be governed by the directions contained in the shipping bill accompanying them, and not by the marks upon the goods.

On cross-examination, he admitted that he received before the fire two letters from Clark, and one from Parker, the station agent at Westfield, in relation to the shingles in controversy.

The plaintiff and William G. Bates both testified that at two former trials of the case of *Finn* v. *Clark*, in which the same facts were in issue, Green did not testify as to his receiving the shingles on storage, and did testify that he had seen the name of J. S. Clark, Southampton, in full, on some of the bunches of the former consignments.

The foregoing is all the material evidence in the case.

The defendant requested the court to rule that upon the whole evidence in the case, the plaintiff was not entitled to recover :

That if the shingles were sent in pursuance of an order from Clark in Southampton, to Finn in Olean, to be forwarded by the usual conveyances to him in Southampton, and the shingles were so forwarded with proper directions, so that it was the duty of the defendant upon the receipt thereof to forward them, then the shingles belonged to Clark, and the plaintiff could not recover :

That if the shingles were ordered of Finn at Olean, by Clark, to be forwarded to him at Southampton, and were forwarded by the usual means of conveyance, properly directed to Clark, then the shingles belonged to Clark, and the plaintiff could not recover.

These rulings the court refused to make in the form requested, but instructed the jury at length as to the duties and liabilities of common carriers, and their obligations in forwarding freight, as applicable to the shingles in question, which instructions were not objected to by either party, and further instructed them that if the defendant's agent knew, by reason of the receipt of the letter alleged to have been sent to him, or by reason of his having seen the name and address of Clark upon the bundles, that the shingles belonged to and were intended for Clark, it was the duty of the defendant to forward them within a reasonable time thereafter, and that the plaintiff could not recover unless he satisfied the jury that the defendant's agent received the letter of June 6, or saw the full name and address of Clark upon the bunches of shingles, and that the jury might consider the fact of the former shipment from Finn to Clark as evidence upon the question whether or not the agent knew for whom the shingles were intended, provided they were satisfied that in such previous instances the freight was not accompanied with proper way-bills, disclosing its destination.

The jury returned a verdict for the plaintiff, and found specially upon the question submitted to them by the court, that Green did see the full name and address of Clark upon the bunches of shingles. The defendant excepted.

*G. Wells*, for the defendant.

*M. B. Whitney*, for the plaintiff.

WELLS, J.*  The only question argued by the defendant, upon these exceptions, is whether the action for loss of the property can be maintained by and in behalf of Finn. It is contended that if there was a delivery, with proper directions for the transportation, so as to charge the defendant with responsibility as carrier, then the title in the property had passed to Clark, the consignee; and the right of action for injury to it was in him alone. On the other hand, if proper directions for its transportation had not been given, then the defendant is not liable at all as

---

\* This case was argued at Boston, January 9, 1874, before all the judges but COLT and AMES, JJ.

carrier, according to the former decision in 102 Mass. 283. It is not contended that the defendant is liable as warehouseman. In either aspect of the case, upon this view of the law, no recovery could be had by Finn.

The jury having found that the defendant became responsible as carrier, the case is now presented only in that aspect. We think also that the facts, as disclosed by the present bill of exceptions, show that the title to the property had passed to Clark before the loss occurred; leaving in Finn at most only a right of stoppage *in transitu.*

The liabilities of a common carrier of goods are various; and, when not controlled by express contract, they spring from his legal obligations, according to the relations he may sustain to the parties, either as employers, or as owners of the property. *Primâ facie,* his contract of service is with the party from whom, directly or indirectly, he receives the goods for carriage ; that is, with the consignor. His obligation to carry safely, and deliver to the consignees, subjects him to liabilities for any failure therein, which may be enforced by the consignees or by the real owners of the property, by appropriate actions in their own names, independently of the original contract by which the service was undertaken. Such remedies are not exclusive of the right of the party sending the goods, to have his action upon the contract implied from the delivery and receipt of them for carriage. This, in effect, we understand to be the result of the elaborate discussion of the principles applicable to the case in *Blanchard* v. *Page,* 8 Gray, 281. That decision may not be precisely in point, as an adjudication, to govern the case now before us ; for the reason that there was a written receipt or bill of lading for carriage by water, and the plaintiffs were acting in the transaction as agents for the owners of the goods; yet the general principles evolved do apply, and are satisfactory to us for the determination of the present case.

When carrying goods from seller to purchaser, if there is nothing in the relations of the several parties except what arises from the fact that the seller commits the goods to the carrier as the ordinary and convenient mode of transmission and delivery, in

execution of the order or agreement of sale, the employment is by the seller, the contract of service is with him, and actions based upon that contract may, if they must not necessarily be in the name of the consignor.   If, however, the purchaser designates the carrier, making him his agent to receive and transmit the goods; or if the sale is complete before delivery to the carrier, and the seller is made the agent of the purchaser in respect to the forwarding of them, a different implication would arise, and the contract of service might be held to be with the purchaser. This distinction, we think, must determine whether the right of action upon the contract of service, implied from the delivery and receipt of goods for carriage, is in the consignor or in the consignee.   In the case of *Blanchard* v. *Page* the action was maintained in the name of the consignors, who were merely the agents of the owners in forwarding the goods.   But that was explicitly on the ground of the express contract with them, embodied in the receipt or bill of lading.

As already suggested, the consignee, by virtue of his right of possession, or the purchaser, by virtue of his right of property, may have an action against the carrier for the loss, injury or detention of the goods, though not party to the original contract. Such action is in tort for the injury resulting from a breach of duty imposed by law upon the carrier; or, in the language of the early cases, upon " the custom of the realm."

There are many cases, both in England and in the United States, in which the doctrine appears to be maintained that, except when there is a special contract, a remedy for injury resulting from breach of duty by a carrier can be had only in the name and behalf of some one having an interest in the property at the time of the breach, which is injuriously affected thereby.

The rule might well be conceded, if the exception were not too restricted.   It will hold good in actions of tort, because they are founded upon injury to some interest or right of the plaintiff. And the cases which support this view are mostly, if not altogether, actions of tort.   This is true of the leading early case from which the doctrine is mainly derived : *Dawes* v. *Peck*, 8 T. R. 330 ; also of *Griffith* v. *Ingledew*, 6 S. & R. 429 ; *Green* v

*Clark*, 5 Denio, 497, 13 Barb. 57, and 2 Kernan, 343 ; and does not appear from the report to be otherwise in *Krulder* v. *Ellison*, 47 N. Y. 36. In discussing the grounds of decision it seems to have been assumed by various judges, as we think, erroneously, that the right of recovery necessarily involved the question with whom the original contract of service was made. And the effort to make the inference of law as to that contract conform to what was deemed the proper decision as to the right to recover for the injury, has led to some statements of legal inference which appear to us to be somewhat overstrained. Thus in *Dawes* v. *Peck*, it is said by Lawrence, J., that, in the payment of freight by the consignor, he is to be regarded as the agent of the consignee ; that the carrier generally knows nothing of the consignor, but looks to the person to whom the goods are directed. In *Freeman* v. *Birch*, 1 Nev. & Man. 420, it is said by Parke, J., " In ordinary cases the vendor employs the carrier as the agent of the vendee." In *Green* v. *Clark*, 13 Barb. 57, it is said by Allen, J., that when the consignee is the legal owner, or the property vests in him by the delivery to the carrier, " it is an inference of law, and not a presumption of fact, that the contract for the safe carriage is between the carrier and consignee, and consequently the latter has the legal right of action." But in the same case in the Court of Appeals, 2 Kernan, 343, it was regarded as immaterial by whom the contract was made, and whether the plaintiff was consignor or consignee, for the purposes of an action of case for negligence by which his property was injured.

In *Griffith* v. *Ingledew*, the dissenting opinion of Gibson, J., assuming that the contract of carriage formed the basis of the action, combats with great force of reasoning the proposition that a contract with the consignee is the legal result of the receipt of goods by a carrier, when no privity with or authority from the consignee is shown, and none professed by the consignor at the time, unless the direction of the goods to the address of the consignee can be taken to be such profession.

The whole force and effect of the reasoning in *Blanchard* v, *Page* is in the same direction. The ordinary bill of lading or re-

ceipt, given to the consignor by the carrier, simply expresses what is the real significance of the transaction independently of the writing.  There is no reason for giving a different interpretation to, or drawing a different inference from, the acts of parties, because of a writing which is nothing but a voucher taken to preserve the evidence of those acts.

Whatever remedy is sought in contract must necessarily be sought in the name of the party with whom the contract is entered into, whether it be special, that is, express, or implied. The question then is simply this: In the absence of an express agreement, with whom is the carrier's contract of employment and service in respect of goods delivered to him by the seller to convey to the purchaser, when there is no privity or relation of agency between the carrier and the purchaser save that which springs from possession of the goods, and the seller has no authority to make a contract for the purchaser except what is to be implied from the agreement of purchase or the order for the goods?

The law imposes upon the carrier the duty to transport the goods, allows him a reasonable compensation, and gives him a lien upon the goods for security of its payment.  It also implies a promise on the one part to carry and deliver the goods safely, and, on the other, to pay the reasonable compensation.  These two promises form the contract.  Each is the counterpart and the consideration of the other.  If the contract of carriage is with the consignee, the reciprocal promise to pay the freight must be his also.  Against this inference are the considerations that the seller is acting in his own behalf in making the delivery, and the goods remain his property until the contract with the carrier takes effect.  The title of the purchaser does not exist until that contract is made.  It follows as a result.  The carrier is not agent for either party, but an intermediate, independent principal.  If made an agent of the consignee, his receipt of the goods cuts off the right of stoppage *in transitu* on the one hand, and satisfies the statute of frauds on the other.  He has a right to look for his compensation to the party who employs him, unless satisfied from his lien.  The fact that, as between seller and purchaser, the purchaser must ordinarily pay the expenses of transportation as a

part of the cost of the goods, does not affect the relations of contract between the carrier and either party. We discover nothing in the nature of the transaction, and we doubt if there is anything in the practice or understanding of the community, which will justify the inference that one to whom goods are sent by carrier, without direction or authority from him, other than an agreement of purchase or consignment, is the party who employed the carrier and is bound to pay him ; unless he assumes such liability by receiving the goods subject to the charge.

The contract is made when the goods are received by the carrier. If it is then the contract of the consignee, it will not cease to be so, and become the contract of the consignor, by reason of subsequent events. Suppose, then, the seller exercises his right of stoppage *in transitu.* Is the purchaser still liable to the carrier for the unpaid freight ? Suppose the contract of sale to be without writing and within the statute of frauds. The contract of the carrier is not within the statute, and the authority to the seller to make such contract in behalf of the purchaser need not be in writing. Is the carrier to look to the purchaser or to the seller for the freight ? Or does it depend upon the contingency whether the contract of sale is affirmed or avoided ? And if affirmed, and the carrier should deliver the goods without insisting on his lien, of whom must he collect it ? The authorities hold, when the agreement of sale is within the statute of frauds, that the contract of the carrier is with the consignor. *Coombs* v. *Bristol & Exeter Railway Co.* 3 H. & N. 510. *Coats* v. *Chaplin,* 3 Q. B. 483.

We do not think the carrier's contract and right to recover his freight can be made to depend upon what may prove to be the legal effect of the negotiations between consignor and consignee upon the title to the property which is the subject of transportation. His contract must arise from the circumstances of his employment. He has a right to look for his compensation to the party who required him to perform the service by causing the goods to be delivered to him for transportation. And that party, unless he is the mere agent of some other, may enforce the contract, and sue for its breach by the carrier.

One who forwards goods in execution of an order or agreement for sale is not a mere agent of the purchaser in so doing. He is acting in his own interest and behalf, and his dealings with the carrier are in his own right and upon his own responsibility, unless he has some special authority or directions from the purchaser, upon which he acts.

The plaintiff in this case is therefore entitled to maintain his action upon the contract; and we think there is no sufficient reason shown to prevent his recovering the full value of the property destroyed. If Clark was the owner at the time, and his interest has been in no way satisfied or discharged, the plaintiff will hold the proceeds recovered in trust for his indemnity. Clark might have prosecuted an action of tort in his own name, and recovered the value of his property lost; in which event the damages in Finn's suit would have been nominal, or reduced to whatever amount of actual loss he suffered. But it is not pretended that Clark has ever brought any suit or made any claim upon the defendant, although knowing of the pendency of this suit, and having testified as a witness in the same; and all claim by him is long since barred. It is to be presumed that he acquiesces in the recovery by Finn. If there were any doubt upon this point, we might order a new trial upon the question of damages only. As there is none, the judgment must be upon the verdict.

*Exceptions overruled*