Argument.

## Wytheville.

SPENCE & NEFF v. NORFOLK AND WESTERN RAILROAD Co.

AUGUST 8, 1895.

1. COMMON CARRIERS—*Suit by Consignor or Consignee—Special Contract—Property in Goods—Action in Tort or Contract.*—A consignor of goods who has made a special contract with a common carrier to carry them, whether he has any interest in them or not, or who has any interest or property in them, general or special, may maintain an action against such carrier for failure to deliver the goods within a reasonable time, or for the loss of or injury to them. The action, at the election of the consignor, may be either upon the special contract, or in tort for failure by the carrier to perform its duty. An action may also be maintained by the consignee, if he have any interest in the goods, but there can be but one recovery.

Error to a judgment of the Circuit Court of Wythe county, rendered February 20, 1894, in an action of trespass on the case, wherein the plaintiffs in error were the plaintiffs, and the defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*Waller S. Poage*, for plaintiffs in error.

*James A. Walker* and *Bolling & Stanley*, for defendant in error :

This was an action brought in the court below, by the plaintiffs in error here, to recover damages alleged to have been

sustained by them on account of the delay of two car-loads of produce shipped from Rural Retreat, Wythe county, Virginia, over defendant company's railroad, to DeWitt & Co., of Columbus, Ohio, and to F. Bayer & Son, of Charleston, South Carolina.

The chief contention here is, whether or not the plaintiffs had sufficient interest, or in fact any interest, in the subject matter of the suit, to maintain an action to recover damages to the goods shipped, upon the common law liability of the carrier.

As to this contention the honorable judge of the court below held with the defendant, and, we think, correctly.

This case, of course, turns chiefly upon the evidence as to the interest of the plaintiffs in the produce shipped.

While there have been a few cases decided that a consignor can maintain an action to recover damages to consignments of goods, the damage having been sustained while in the possession of the carrier, yet the great majority of the authorities hold that the consignee is the proper party to sue, and certain well-defined principles have been laid down, which we think are conclusive of this case.

1st. *Prima facie,* the party to whom the goods are consigned is the owner. 2d Rorer on Railroads, 1330, sec. 5; Angel on Carriers, sec. 497; *Angel* v. *Mississippi, &c., R. Co.,* 9 Iowa 487; *Webb* v. *Winter,* 1 Cal. 417; *Decan* v. *Shipper,* 35 Penn. St. 329; *Green* v. *Clark,* 12 N. Y. 343; *Dows* v. *Green,* 24 N. Y. 638; *Merchants National Bank* v. *Bangs,* 102 Mass. 291; *Foster* v. *Roper,* 111 Mass. 10; *Minor* v. *Norwich, &c., R. Co.,* 32 Conn. 91; *Penn. Co.* v. *Holderman et als.,* 1 Am. and Eng. R. Cases 285.

2d. The party to maintain the action must be he in whom the title to the property is vested. 2 Rorer on Railways 1262; 12 N. Y. 347; 1 Am. and Eng. R. Cases 285; 47 N. Y. 36; 73 N. Y. 252; 8 T. R. Rep. 330; 6 East 23; 17 Am. St. Rep. 763; 3 Am. Dec. 310.

3d. An order by a consignee to deliver goods to a common carrier, to be shipped to him at a given point, when the directions are complied with, and the goods are delivered to the carrier, passes the title from the consignor to the consignee, and the consignee is the only party that can maintain an action against the carrier for damages to the goods. In other words, the delivery to the carrier passes the title. Hutchinson on Car., secs. 733 and 736; *Laudon* v. *Robertson*, 30 Am. and Eng. R. Cases 23; *Higgins* v. *Murray*, 73 N. Y. 252; *Wigton* v. *Bowley et als.*, 3 Am. and Eng. R. Cases 328; *Terry* v. *Wheeler*, 25 N. Y. 520; *Crulder* v. *Ellison*, 47 N. Y. 36; *Potter* v. *Lansing*, 3 Am. Dec. 310; *Wait* v. *Baker*, 2 Ex. 1; *London, &c., R'y Co.* v. *Bartlett*, 7 H. and N. 400; *Johnston* v. *Stoddard*, 100 Mass. 306; *Magruder* v. *Gage*, 33 Md. 344; *Waldron* v. *Romaine*, 22 N. Y. 368; *Rogers* v. *Phillips*, 40 N. Y. 519; *Garland* v. *Lane*, 46 N. H. 245; *Watkins* v. *Payne*, 57 Ga. 50; *Southwestern Fr. Co.* v. *Stannard*, 44 Mo. 71; *Bradley* v. *Wheeler*, 44 N. Y. 495; *Dyer* v. *Libbey*, 61 Me. 45; *Ober* v. *Smyth*, 78 N. C. 313; *Lake C. R. Co.* v. *Mason*, 16 N. Y. 451, 464; *Green* v. *Clark*, 12 N. Y. 343; *Schemertz* v. *Dwyer*, 53 Penn. St. 335; *Herd* v. *Cook*, 75 N. Y. 454.

4th. The proper party plaintiff to a suit is he at whose risk the goods were shipped. If they were shipped at the risk of the consignor, he is the proper party; if at the risk of the consignee, he is the party. Hutchinson on Car., secs. 733 and 736; *Potter* v. *Lansing*, 3 Am. Dec. 310.

This case, if tried by any of the foregoing principles, must result in a decision in favor of the defendant in error. We need no better evidence than that of the plaintiff in error to sustain our contentions in this case. Mr. Spence, in his deposition, on page 13 of the record, says: " They [the goods] were sold outright, at Rural Retreat, and not on consignment." And on page 14: " The goods were sold f. o. b. the cars

at Rural Retreat, and at the time they were shipped were charged on our books to the consignees." On page 16 : " I told Mr. Baumgardner, who was the agent of the defendant company, that they were shipped at the risk of these people, and we refused to give any directions as to the disposition of the cars, telling him that we had nothing to do with the shipment, that they were sold to Bayer & Son and DeWitt & Co., and at their risk." On page 17 : " The goods were shipped to these parties as purchasers. They were sold to them, shipped to them, and charged to them."

To the same effect is the evidence of the consignees. On page 35 of the record, in answer to question 4, Mr. W. S. Bayer, a member of the firm of Bayer & Son, says : " We bought the goods outright."

Certainly no clearer case could be made out upon the evidence that it was the intention of the parties to make a full and complete sale of the goods to the consignees at Rural Retreat, and, this being the case, the plaintiffs in error can in no possible way maintain the action brought.

In one case, *Commonwealth v. Fleming*, 17 Am. St. Rep. 763, the court went so far as to say : " Where a purchaser orders goods sent him C. O. D., and the order is accepted by the seller, and the goods are delivered to the carrier, the sale on the part of the seller is complete." Much more would this be so when the goods were consigned absolutely to the purchaser. See, also, 73 N. Y. 252.

It makes no difference how the goods were to be paid for ; if they were sold to the consignees and shipped at their risk, the action must be brought in their name, and that, too, whether the goods were sold on a credit or for cash. 2 Rorer on Railroads, 1330.

It is contended by the plaintiffs in error that the goods were not the property of the consignees until paid for, and that they had no authority to demand the goods unless the bill of

lading was presented.  The contention is certainly not based upon any evidence in the case, because it is positively proven, by their own evidence, that the sale was made outright at Rural Retreat.  But, even if this were the case, the bill of lading would pass the title to the goods, and when the consignees presented that bill of lading to the carrier they had no other alternative than to deliver the goods to them.  And it certainly was delivered, because the consignees filed it in their deposition given in this case.  3 Am. and Eng. R. Cases 330 ; 2 Rorer 1328 ; *Dows* v. *Green,* 24 N. Y. 638.

The question as to whether or not freight was paid by the consignors, or guaranteed by them, is no argument in favor of the plaintiffs in error, and is no guide to determine who is the proper party to sue.  2 Redfield on Railways, 171 ; *Green* v. *Clark,* 13 Barb. 57 ; *Crulder* v. *Ellison,* 47 N. Y. 40.

On the contrary, the evidence shows that the plaintiffs in error have not paid one cent of the freight.

Such is the trend of authorities.  In all, or at least in a great majority, of the cases which hold that the consignor can maintain the action, it has been so held upon the ground alone that the action was one of assumpsit upon the contract made by the consignor with the carrier, and in these very cases the rule is laid down as being that an action *ex delicto,* upon the common law liability of the carrier, cannot be maintained by the consignor.

The action brought by the plaintiffs in error, in the court below, is an action *ex delicto,* and not upon the contract, and therefore they cannot recover.  *Finn* v. *Wes. R. Co.,* 17 Am. Rep. 128 ; Hutchinson on Car., sec. 730.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff in error brought an action on the case against the defendant in error, for damages for failing, as a common

carrier, to deliver at their destination, within a ·reasonable time, two car-loads of vegetables and fruit.

The verdict of the jury and the judgment of the trial court were in favor of the defendant, and to that judgment this writ of error was allowed.

The principal error complained of was the refusal of the court to give instruction No. 5 asked for by the plaintiffs, and the giving of an instruction of its own in lieu thereof. The instruction asked for, and which was refused, was as follows:

" The court further instructs the jury that, when the risk of the safe transportation of the goods is upon the consignor, he will be considered as the owner, for the purpose of maintaining an action against the carrier for their loss or injury.

" Therefore, if the jury shall believe from the evidence in this case that the risk of the transportation of the goods and produce set out in the plaintiffs' declaration was upon them [plaintiffs], they are entitled to maintain this action for said loss or injury."

The instruction the court gave in ·lieu of it is in these words:

" If the jury believe from the evidence that the plaintiffs contracted to sell to DeWitt & Co. and Bayer & Son certain produce; and if the jury believe that, according, to the true intent and meaning of the said contracts between the said plaintiffs and the said DeWitt & Co. and Bayer & Son, the plaintiffs sold the said produce to the said DeWitt & Co. and Bayer & Son, at an agreed price, free on board the defendant's cars at Rural Retreat, and that the plaintiffs did deliver said produce on the defendant's cars at Rural Retreat, and consigned the same to said DeWitt & Co. and the said Bayer & Son, at Columbus, Ohio, and Charleston, S. C., to be de-

livered to the said consignees at their destinations by the defendant, and that plaintiffs charged the said DeWitt & Co. and Bayer & Son, on the books of the plaintiffs, with the price of said goods so shipped to them—then the plaintiffs cannot maintain this action, and the jury should find for the defendant."

On the trial of the cause the defendant does not seem to have controverted its liability for failure to perform its duty in carrying the goods shipped, but relied entirely upon the defence that the plaintiffs had no interest in the goods shipped after they were delivered to the defendant, and therefore had no right of action against it for such failure of duty, or, if they had any right of action at all, it was an action of assumpsit on the contract, and not an action on the case in tort.

The question has been very much discussed in this country whether the shipper or consignor can maintain any action against a common carrier for damages done to goods after they have been received by such carrier for the purpose of carriage, and before they have been delivered to and received by the consignees, when the shipper or consignor had no right of property, general or special, in the goods, and no right or interest in their safe carriage, except that arising from the bill of lading.

One line of cases holds that, since the shipper or consignor has parted with all interest in the property, he cannot be injured by the failure of the common carrier to perform its duty, or to keep its contract, and the consignee or owner alone can maintain the action.

Another line of cases holds that, inasmuch as the contract for shipment was made by the shipper or consignor, he has the right to maintain such action, because the carrier agreed with him to carry the goods safely, and within a reasonable time, and the action is for the breach of that agreement.

This subject was discussed at length, and with great learning and ability, by Chief Justice Shaw, in the case of *Blanchard* v. *Page*, 8 Gray 281. The facts of that case showed that the plaintiffs in the action against the carrier had sold goods to another party, who had paid for them, and they afterwards delivered the goods to the common carrier, to be forwarded for them. When they delivered them to the carrier they took from it a bill of lading, purporting to be a contract with the shippers to carry and deliver the goods to the purchaser. The goods were lost, and an action was brought by the shippers against the carrier for their value, upon the contract in the bill of lading. It was admitted that the shippers had no interest or property in the goods at the time of the shipment, and it was for that reason contended that they could not maintain the action ; but the court held, notwithstanding the fact that they had no interest in the goods shipped, that an action could be maintained upon the contract. And this position was sustained by an argument, both upon general principles and upon authority, which, as Mr. Hutchinson says in his work on Carriers, seems unanswerable. In a later case decided by the same court it was held that, where there was no bill of lading, nor other writing evidencing the contract, an action could be maintained by the consignor, who had no interest in the property shipped, nor an express contract with the carrier. *Finn* v. *Western R. Corp.,* 112 Mass. 524 ; 17 Am. Rep. 128.

Mr. Hutchinson, in his work on Carriers, after discussing this question at length, reaches the conclusion that the consignor, who has made a special contract with the carrier, may always maintain an action upon it for the loss of or damage to the goods, regardless of the question of interest or property in them. Nor would it appear to be material whether the freight upon them has been paid by him or another. If not paid, he is the party to whom the carrier may look for its

payment, in case the consignee should refuse to accept the goods, or to pay the carrier's charge upon them. And if paid, no matter by whom, the payment would be a sufficient consideration for the contract with the consignor. Section 728.

Angell on Carriers, section 499, says that the rule upon this subject is properly stated by Park, J., in *Freeman* v. *Birch*, 1 Nev. & M. 420, in which it was held : " That the person employing the carrier must bring the action, but that the circumstance of the legal right, being in one person, may be evidence of employment by that person. Hence it follows that, in order to decide who is the proper party to be made plaintiff in an action of this nature, the first inquiry must be whether any special agreement for the carriage of the goods in question exists. If there is none, it then becomes necessary to ascertain in whom the right of property is vested. In the former case, the remedy for any breach of contract belongs to the party with whom such agreement is made. Therefore, where the consignor agrees with the carrier for the conveyance of the goods, and is to pay him, the action is well brought."

The plaintiffs in this case, according to their evidence, not only made a special contract with the defendant, by which they guaranteed the payment of the freight, but the consignees were not entitled to the possession of the goods until they accepted the drafts attached to the bills of lading. The sales in this case were made by telegram. The Columbus purchasers or consignees, DeWitt & Co., wired the plaintiffs for prices, who replied that they would sell them the produce shipped, at a certain price, " f. o. b. the cars [free on board the cars] at Rural Retreat, shipment subject to draft with bill of lading attached." DeWitt & Co. then wired the plaintiffs not to send draft, and they would remit. The plaintiffs answered, refusing to ship unless they would agree to their terms. DeWitt & Co. then wired them to ship according to their first

proposition. The same kind of a contract, it seems, was made with Bayer & Son, the Charleston purchasers or consignees. It is very clear from their contracts that the plaintiffs did not intend to part with all interest in the goods when they delivered them to the defendant for shipment. The evidence shows that when the consignees refused to receive the goods, on the ground that they were damaged, the plaintiffs, upon being notified of the fact, refused to give directions as to the disposition of the goods, on the ground that they had sold them to the consignees, and the goods were shipped at their risk. This action of the plaintiffs could not change the original contract between them and the consignees. The most that can be said of it is that their conduct at that time is inconsistent with their claim now. It is also equally true that the conduct of the defendant at that time was inconsistent with its present claim. Then it treated the plaintiffs as the owners of the goods, and insisted upon paying, and did pay them, the balance of the amount received upon the sales of the goods shipped to Charleston, after paying the freight. Now it insists that the plaintiffs had no interest in the goods shipped after they were delivered to it for shipment. While the conduct of both parties has been inconsistent with their present claims, such conduct cannot affect their legal rights in this case, as neither acted upon the other's conduct to his prejudice.

The evidence shows, or at least tends to show, that the consignees had no right to the possession of the goods shipped until they paid the drafts which were attached to the bills of lading. In such a case, Mr. Benjamin says, in sec. 399 of his work on Sales (2d Amer. ed.), " that where a bill of exchange for the price of goods is inclosed to the buyer for acceptance, together with the bill of lading, the buyer cannot retain the bill of lading unless he accepts the bill of exchange; and, if he refuses acceptance, he acquires no right to the bill of lading, or the goods of which it is the symbol."

Mr. Angell says : " Where the direction is not to deliver the goods in case of the existence of certain circumstances, nor until payment should be made by the consignee in cash, the property in the goods continues in the consignor." Sec. 511.

Hutchinson on Carriers, in discussing this subject, says : " But, after all, the question whether the property in the goods has passed to the consignee by a delivery to the carrier, will depend upon the intention of the transaction, and this may always be shown. And goods may be shipped to the order, and on account of the consignee as purchaser, and yet his right to the possession of them may be incomplete, as where the direction to the carrier is not to deliver the goods until payment of the price or a compliance with some other condition by the consignee. In such cases, of course, the title to the goods remains in the consignor until the conditions upon which delivery is to be made have been complied with." Sec. 734.

There are cases which hold, where goods are sold and shipped C. O. D., the title passes ; but in those cases it is admitted that the seller has a special property in the goods sold. In the case of *Pilgreen* v. *State*, 71 Ala. 368, which was a case where a liquor dealer received an order requesting him to send whiskey by express, C. O. D., to the party ordering it, it was said : " The general property, however, passed to the buyer by the delivery to the express company at Calera [the place from which the whiskey was shipped]. The risk of loss then passed to him, though there may have remained in the seller a special property, and though the buyer could not, without payment of the price, entitle himself to the absolute property, and to the actual possession. * * * The seller has a lien upon the property for the price, and the right of possession until it is paid."

Whether the contracts in this case vested the title to the goods sold in the consignees, when delivered to the defendant

company for shipment, subject to the lien for the purchase price, and the right to the possession until the drafts were accepted, or whether the title did not vest in them until the drafts were accepted, is not material, for, in either case, the plaintiffs had such interest and rights in the property, as would entitle them to maintain an action; for it is well settled that where both the consignor and the consignee have an interest in the goods, one having a general and the other a special property, either may sue; but a recovery by one constitutes a bar to an action by the other. *Freeman v. Birch,* 1 Nev. & M. 420; *Mayall* v. *Boston & M. Railroad,* 19 N. H. 122, 49 Am. Dec. 149; 2 Am. & Eng. Ency. Law, pp. 902, 903. The plaintiffs having such interest in the goods shipped (if any interest be necessary where they have made a special contract with the carrier for their shipment, and guaranteed the payment of freight) as gives them the right to maintain an action against the defendant, the question arises, Can they maintain an action of tort, or must they bring *assumpsit?*

That they can maintain an action on the case, as well as an action of *assumpsit,* we think, is well settled.

In the case of *Boorman* v. *Brown,* 3 Q. B. 511, Chief Justice Tindal, in delivering the opinion of the court, said: " That there is a large class of cases in which the foundation of the action springs out of privity of contract between the parties, but in which, nevertheless, the remedy for the breach, or non-performance, is indifferently either *assumpsit* or case upon tort, is not disputed. Such are actions against attorneys, surgeons, and other professional men, for want of competent skill or proper care in the service they undertake to render; actions against common carriers, against ship-owners on bills of lading, against bailees of different descriptions, and numerous other instances occur in which the action is brought in tort or contract at the election of the plaintiff."

The principle in all these cases would seem to be that the contract creates a duty, and the neglect to perform the duty, or the non-feasance, is a ground of action upon a tort.

Angell on Carriers, sec. 422, says, in discussing this question : " But, in respect to the proper form of action at common law against all common carriers, there was for a long time a question, and one much agitated among pleaders ; and it was natural that the question should arise out of the innovation upon the common law duties of carriers. As long as their occupation was considered only as a public duty, the breach was tort, for which they were liable to an action on the case, founded upon the custom of the realm ; or, in other words, upon the common law. In time, however, they succeeded in establishing the existence of a contract, and then they at once became liable to an action of *assumpsit* on their undertaking ; and a very long-established, continued, and uniform usage has sanctioned the principle and adopted the advantages of both forms of action ; so that the case may be considered either way, as arising *ex contractu* or *ex delicto*, according as the neglect of duty, or breach of promise, is intended to be relied on as the cause of injury. The practice of declaring against common carriers on the custom of the realm was as ancient as the law itself, and was uniformly adopted until the case of *Dale* v. *Hall* (decided in 1750), 1 Wils. 281, when the practice of declaring in *assumpsit* succeeded ; but for four hundred years before that time the declaration was in tort on the custom."

It is said by Hutchinson on Carriers : " Since this recognition [in the case of *Dale* v. *Hall*] of the right of the bailor of the goods to sue upon his contract with the carrier, the two forms of action, the one in *assumpsit* for breach of contract, and the other in tort for the breach of duty, have been adopted indifferently, or as best suited the purposes of the pleader." Sections 738–740 ; 2 Am. & Eng. Ency. Law, p. 903 ; 3 Rob. Pr. (new), 437–441.

Opinion.

This court, in the case of *Southern Exp. Co.* v. *McVeigh,* reported in 20 Gratt. 264, 284, held that where there is a public employment, from which arises a common law duty, an action may be brought in tort, although the breach of duty assigned is the doing or not doing of something contrary to an agreement made, in the course of such employment, by the party upon whom such general duty. is imposed. In that case, as in this, there was a special agreement, and this court held that the plaintiff had the right to bring, as he did, an action of tort.

In *Ferrill* v. *Brewis,* 25 Gratt. 765, 768, Judge Staples said: " There is a class of cases [among them that of bailment] in which the foundation of the action springs out of the privity of contract between the parties, but in which, nevertheless, the remedy for the breach or non-performance is indifferently in *assumpsit* or in case upon tort."

The plaintiffs made the contract with defendant for the shipment of the goods, and guaranteed the payment of the freight. They are, therefore, parties to the contract, and had an interest in the safe delivery of the goods; and it is not for the defendant, who made the contract with them, to say, upon a breach of that contract, that the plaintiffs are not entitled to recover damages which are the direct and natural consequence of such breach of contract. *Blanchard* v. *Page,* 8 Gray 281, 301.

Even if the defendant had not required the plaintiffs to guarantee the payment of the freight, we do not think its right to recover the same, if it had performed its duty, and the proceeds of the goods shipped were insufficient to pay its freight, could be made to depend upon what may prove to be the legal effect of the dealings between the consignors and consignees upon the title to the property which was the subject of transportation. It had the right to look for its compensation to the plaintiffs, who required it to perform the

service by delivering the goods to it for transportation. And the plaintiffs, unless they were the mere agents of the consignees, have the right to enforce the contract made with the defendant, and to sue for its breach; and their right to do so cannot be made to depend upon the question whether or not the title to the goods shipped passed by their dealings with the consignees. There can be but one recovery against the defendant for its breach of contract, or its failure to perform its duty, whether the action be brought by the plaintiffs, with whom the contract was made, or by the consignees, if they were the owners of the goods. *Finn* v. *Western R. Corp.*, 112 Mass. 524, 533, 534; 17 Am. Rep. 128.

The consignees in this case, if they had the right to do so, have brought no action, and there is not only no suggestion that they have ever made any objection to the plaintiffs' maintaining this action, but they, or members of their firms, are introduced as witnesses by the plaintiffs in proving their case.

We think that an action on the case in tort may be brought against the carrier, by the party who makes the special contract with it, for its breach of the contract, unless there be in the contract some undertaking by the carrier which it would not be its duty to perform under the common law. In such case damages for a breach of such additional undertaking could, perhaps, only be recovered in an action *ex contractu*.

The plaintiffs, we think, had the right to maintain this action against the defendant, if they proved either that they had made a special contract with it for the transportation of the goods, or that they had any interest or property in the goods, either general or special, and that the defendant had committed a breach of its contract, or failed in the performance of its duty; and that the jury should have been so instructed.

It follows from what has been said that the Circuit Court

erred in the instruction complained of; and for such error its *judgment must be reversed*, and a new trial awarded, to be had in accordance with the views expressed in this opinion.

*Reversed.*