AMERICAN SUGAR REFINING CO. v. DELAWARE, L. & W. RY. CO:

SAME v. NEW YORK CENT. & H. R. R. CO.

(District Court, D. New Jersey.  November 21, 1912.)

1. CARRIERS (§ 35*) — INTERSTATE COMMERCE — RATES — FILED TARIFF — ENFORCEMENT—CONTRACT.

Since the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), endowed the Interstate Commerce Commission with plenary administrative power to supervise freight tariffs, and imposed on it the duty to annul any tariffs in contravention of the act, and generally to enforce its provisions, requiring shippers seeking reparation predicated on the unreasonableness of a published rate to primarily invoke redress through the Commission, which alone was vested with power to entertain original proceedings for the alteration of an established schedule, a filed rate on sugar, providing for allowances for carting from refinery to cars, did not constitute a contract between the carriers and the shippers which would survive a determination by the Commission, in other proceedings, that it constituted a rebate, and requiring the carriers to desist from making the same.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 94;· Dec. Dig. § 35.*

What constitutes an unlawful preference or discrimination by a carrier under interstate commerce regulations, see note to Gamble-Robinson Commission Co. v. Chicago & N. W. Ry. Co., 94 C. C. A. 230.]

2. COMMERCE (§ 88*)—INTERSTATE COMMERCE—DECISION OF COMMISSION—EFFECT.

Where the Interstate Commerce Commission decided that a tariff provision for an allowance for carting shipments of sugar from refinery to the cars constituted a rebate and should be eliminated, the decision of itself operated to eliminate such provision from the filed tariffs, without action upon the part of the carriers; they being required to refrain from making such allowances from the time of the decision until it should be reversed, or its operation suspended.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141; Dec. Dig. § 88.*]

3. CARRIERS (§ 32*) — INTERSTATE COMMERCE — RATES — "TRANSPORTATION" — "SERVICE CONNECTED WITH TRANSPORTATION."

Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 15, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165], as amended by Act June 18, 1910, c. 309, § 12, 36 Stat. 551 [U. S. Comp. St. Supp. 1911, p. 1300]), provides that if the owner of property transported under the act directly or indirectly renders any service connected with the transportation, or furnishes any instrumentality used therein, the charge and allowance therefor shall be no more than is just and reasonable, and the Commission may, after hearing on a complaint, or on its own initiative, determine what is a reasonable charge, etc.  Held, that cartage of sugar from refinery 'to cars did not constitute "transportation," nor a "service connected with transportation," within such act, for which the carrier was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

justified in making an allowance under section 15: and that such allowance constituted an illegal rebate.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 83–85; Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 8, pp. 7075, 7076.]

Actions by the American Sugar Refining Company against the Delaware, Lackawanna & Western Railway Company and the New York Central & Hudson River Railroad Company. Judgment for defendants in each case.

Chauncey G. Parker, of Newark, N. J., and William A. Glasgow, Jr., of Philadelphia, Pa., for plaintiff.

John L. Seager, of New York City, for defendant Delaware, L. & W. Ry. Co.

Albert C. Wall, of Jersey City, N. J., for defendant New York Cent. & H. R. R. Co.

RELLSTAB, District Judge. These actions were decided in favor of the defendants at the conclusion of the argument. At that time the court stated some of the reasons which influenced its judgment, offering to file a written memorandum, if counsel so desired. The following is in response to the request for such memorandum, and contains the result of the court's additional reflection, as well as some of the reasons that appeared to be controlling at the time of such decision.

These actions were tried together before the court, without a jury, and are to recover an allowance of two cents per 100 pounds from the full rate mentioned in certain tariffs which the defendants filed with the Interstate Commerce Commission, which allowances, as per said tariffs, are for carting certain shipments of sugar (car load lots) from the plaintiff's refinery to the cars or stations of said defendants. In the case of the New York Central & Hudson River Railroad Company the principal sum claimed as the aggregate of such allowances is $2,880.06, covering shipments from October 6, 1908, to April 16, 1909, inclusive; and in the case of the Delaware, Lackawanna & Western Railway Company such aggregate sum is $5,195.59, covering shipments from March 5, 1908, to May 1, 1909, inclusive.

The validity of these allowances was made the subject of investigation by the Interstate Commerce Commission, on its own motion, under section 13 of "the Act to Regulate Commerce" (Act Feb. 4, 1887, c. 104, 24 Stat. 383 [3 U. S. Comp. St. 1901, p. 3164]), and on December 12, 1908, were declared to be rebates, and in violation of said act and the acts amendatory thereof and supplementary thereto. In the Matter of Allowances for Transfer of Sugar, Op. No. 742, 14 Interst. Com. Com'n R. 619. No formal order annulling such allowance was entered in such cause; the Commission stating in that behalf:

"No order will be made at this time; but the Commission will expect the carriers in question at once to conform their tariffs and practices to the principles here announced. If this is not done, the Commission will take such steps to enforce compliance with its views in this connection, either by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an order in this proceeding (jurisdiction of which is reserved for that purpose), or by such other means as it may deem advisable in the premises."

In obedience to such decision, the defendants desisted from making such allowances, though no corrected tariffs in conformity therewith were filed with such Commission by either defendant until after the expiration of the period covered by the claims in suit.

Inter alia, the jurisdiction of the court over such actions was challenged, on the ground that by the first section of the act of June 18, 1910, c. 539, 36 Stat. 539 (now section 207 of the Judiciary Act of March 3, 1911, c. 231, 36 Stat. 1148 [U. S. Comp. St. Supp. 1911, p. 216]), creating the Commerce Court, the District Courts were stripped of their jurisdiction over such actions. This challenge is based upon the theory that these actions are, in substance, but legal proceedings to annul the order of the Interstate Commerce Commission, and therefore within the second class of enumerated cases, over which the Commerce Court is given exclusive jurisdiction by such section. As I have reached the conclusion that judgment must be rendered in favor of the defendants, even if controlling effect be given to the form in which the plaintiff has stated its causes of actions, it is unnecessary to consider the effect of the act in question upon the general jurisdiction of the court over suits which, in effect, would be to annul the decision of the Interstate Commerce Commission.

[1] These actions are based upon the idea that the tariffs, as filed, constituted a contract between the defendants and shippers, and so continued in their entirety, regardless of the decision of the Commission declaring the allowances invalid. This, in my judgment, is erroneous. "The Act to Regulate Commerce" endowed the Commission with plenary administrative power to supervise freight tariffs, and charged it with the duty to annul any tariffs in contravention of such act, and generally to enforce the provisions thereof. It also evinces a clear purpose to require shippers seeking reparation predicated upon the unreasonableness of a published rate to primarily invoke redress through the Commission, which alone is vested with power to entertain original proceedings for the alteration of such established schedule, notwithstanding that sections 9 and 22 of such act seemingly give the aggrieved party the option of bringing suit in the first instance in the District Court to recover damages for violation of the provisions of said act. Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 438, 442, 448, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; B. & O. R. Co. v. Pitcairn Coal Co., 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292; Proctor & Gamble v. United States, 225 U. S. 282, 32 Sup. Ct. 761, 56 L. Ed. 1091; Morrisdale Coal Co. v. P. R. R. Co. (C. C.) 176 Fed. 748, affirmed 183 Fed. 929, 106 C. C. A. 269. See, also, Erie R. Co. v. Wanaque L. Co., 75 N. J. Law, 878, 69 Atl. 168.

[2] The effect of the Commission's decision was to eliminate such allowances from the filed tariffs. No co-operation by the defendants was required to bring about such result. They were as much bound to refrain from making such rebates from the time of such decision until it should be reversed, or its operation suspended, as if the tariffs had never contained such allowances. To do otherwise would sub-

ject the defendants to the penalties of the Commerce Act. Such decision was equally binding upon the shippers. That the plaintiff was not an actual party to such inquisition before the Commission is immaterial. It would in all probability have been permitted to intervene in such proceedings before final determination; or it could have applied to such Commission at any time after the corrected tariffs went into effect, which, as here determined, was upon the rendition of such decision, to pass upon the reasonableness of the flat rate then being enforced. Neither of these steps, however, was taken by the plaintiff. Therefore it is not in a position to question the correctness of such decision directly, and it cannot do so collaterally.

If these observations correctly give the status of the tariffs in question, the alleged basis for the actions, viz., tariffs containing such allowances, does not exist. The only tariffs in force are those that call for a flat rate unrelieved by allowances. The plaintiff's pleadings do not, and are not intended to, charge that such tariffs are unreasonable; but, if they did, under the cited cases, such issues could be tried out in the first instance only by the Commerce Commission.

Assuming, however, that this decision of the Commission is not binding upon the plaintiff, because it was not made a party to such investigation, and that it has the right to institute a suit in this court in the first instance to enforce its contractual rights arising from the filing of the tariffs containing such allowances, it cannot recover, because it is manifest that the allowances for draying the plaintiff's product from its refineries to the railroad is but a rebate, and violative of the act to regulate commerce.

[3] The plaintiff's insistence is that such allowance is for a service in connection with the transportation of sugars, and is authorized by section 15 of such act, as amended by Act June 18, 1910, c. 309, § 12, 36 Stat. 551 (U. S. Comp. St. Supp. 1911, p. 1300). The pertinent part of such section is as follows:

"If the owner of property transported under this act directly or indirectly renders any service connected with such transportation, or furnishes any instrumentality used therein, the charge and allowance therefor shall be no more than is just and reasonable, and the Commission may, after hearing on a complaint or on its own initiative, determine what is a reasonable charge as the maximum to be paid by the carrier or carriers for the services so rendered or for the use of the instrumentality so furnished, and fix the same by appropriate order, which order shall have the same force and effect and be enforced in like manner as the orders above provided for under this section."

It will be noted that this section recognizes the right of the owner of property transported to receive a just and reasonable allowance, when he directly or indirectly renders any service connected with such transportation. The term "transportation," as defined by section 1 of such act, includes "all instrumentalities and facilities of shipment or carriage, * * * all services in connection with the receipt, * * * transfer in transit * * * and handling of property transported." After so defining "transportation," said section provides:

"It shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor."

In a sense the sugars, in being drayed from the refinery to the railroad, were transported; but such transportation is not within the comprehension of such term as here legislatively defined. The draying service here rendered is normally one that falls upon the shipper, and not the carrier, and could not be exacted from the latter. It will be observed that, while all the services included within this legislative definition of transportation normally fall upon the carrier, as a fact they could be rendered by the shipper; but it is clear that, as the act casts upon the carrier the duty to, perform, upon request, what it defines as transportation, any services which could not be exacted from the carrier would not come within the meaning of "transportation" thus defined, even though rendered by the shipper.

The plaintiff does not contend that transportation begins at the factory, but insists that, while such draying may not be transportation, it is a "service connected with" transportation, within the meaning of section 15; but the phrase "service connected with" such transportation, as used in such section, can be given no more comprehensive meaning than the similar phrase "service in connection with" the receipt of property to be transported, contained in section 1. The argument that at common law a common carrier, in the promotion of its business, could contract to dray the goods from the factory to its railroad is not helpful in this discussion. Many of the common-law rights of carriers have been taken away; and in the matter of making allowances for services rendered in connection with transportation it is perfectly manifest that the only services of the shipper that can be compensated for by the carrier, under the statute, are such as are rendered by the shipper after the carrier's duty to take and transport the goods has begun. Draying of the kind under consideration necessarily precedes both the receipt and the transportation of the sugars by the railroad company. To hold that a carrier may allow for such draying services is, in effect, a warrant to exact more for the transportation of sugars from a refinery located on the railroad than from one located remote therefrom—a clear discrimination in favor of the shipper with the less favored location. That the allowance was to all shippers of car load lots similarly circumstanced does not make it any less discriminatory. While a classification for the purpose of making differences in freight rates may be permitted, such segregation must be based on rational distinctions; otherwise the main purpose of the act—to enforce equality between shippers—would be frustrated. The discrimination in these allowances arises in the carrier's assumption of a non-existing duty, and making it the basis for obliterating a disparity not due to the carrier's lack of transportation facilities as compared with its competitors, but to that of the shipper with respect to his competitors. The Commission's decision that it is not the carrier's duty to bear the expense of transferring goods from the shipper to the carrier, and that the carrier's undertaking to pay for such services was to rebate, and in violation of the Commerce Act, even if not controlling, is sustained by reason and not opposed by authority, and will be followed in this case.

Judgment will be entered for each defendant.