CHICAGO, R. I. & G. RY. CO. v. FLOYD.
(Court of Civil Appeals of Texas. Amarillo. Dec. 6, 1913.)

1. ALTERATION OF INSTRUMENTS (§ 8*) — FREIGHT—ALTERATION OF BILL OF LADING.
    If a bill of lading, when signed by the consignor, was not indorsed "charges guaranteed" but was afterwards altered by adding such words, it would not bind the consignor.
    [Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 40–46; Dec. Dig. § 8.*]

2. CARRIERS (§ 194*)—FREIGHT—LIABILITY OF CONSIGNOR.
    As a rule a consignor with whom a contract of shipment is made is impliedly liable for the freight charges, irrespective of whether he is owner.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 870–872; Dec. Dig. § 194.*]

3. CARRIERS (§ 194*)—FREIGHT—LIABILITY FOR CHARGES—CONSIGNOR AS AGENT.
    While a consignor is ordinarily liable for the freight charges, if the owner is the real consignor, and the person making the shipment, to the carrier's knowledge, only acts as the consignor's agent, the owner, and not his agent, is liable for the freight charges.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 870–872; Dec. Dig. § 194.*]

4. PRINCIPAL AND AGENT (§ 136*)—LIABILITY OF AGENT—KNOWN PRINCIPAL.
    An agent is not personally responsible upon a contract made for a known principal.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 447–450, 476–491; Dec. Dig. § 136.*]

Appeal from Gray County Court; Siler Faulkner, Judge.

Action by the Chicago, Rock Island & Gulf Railway Company against L. O. Floyd and others. From a judgment in favor of defendant named, plaintiff appeals. Affirmed.

Gustavus & Jackson, of Amarillo, and N. H. Lassiter, of Ft. Worth, for appellant. Synnott & Underwood, of Amarillo, for appellee.

HUFF, C. J. The appellant railway company brought suit against L. O. Floyd, the appellee, and D. W. Thomas and S. F. Biggers, in a justice court in Gray county, to recover $165.58 freight charges on three cars of watermelons alleged to have been shipped by said parties over appellant's line of road from McLean, Tex., to Ft. Worth, Tex. A default judgment was rendered against Biggers and Thomas, and a judgment in favor of L. O. Floyd. The railway company appealed to the county court of Gray county, where a like judgment was rendered, from which appellant prosecutes an appeal to this court. It is alleged in

substance that L. O. Floyd in October, 1911, delivered to appellant three cars of watermelons to be shipped from McLean, Tex., to Ft. Worth, Tex., consigned to D. W. Thomas, giving the dates when the cars were to be shipped and the freight rate; that Floyd signed the contracts or bills of lading for the transportation of the melons, on which was indorsed, "Charges guaranteed." The freight charges were not prepaid by him. It is alleged the defendants therein, Thomas, Biggers and Floyd, were jointly interested in making the shipment, and that L. O. Floyd, in signing the contracts and bills of lading for the shipment thereof, was acting for and on behalf of D. W. Thomas and S. F. Biggers and was the agent for said parties and of each of them. And all of said defendants were partners in making the shipment and each was liable for the freight and demurrage, and, if appellant was mistaken as to the joint and several liability, then that L. O. Floyd is liable for the freight and demurrage charge. It is further alleged that three cars were transported to Ft. Worth, Tex., and tendered to the consignee and freight charges demanded, which were not paid but refused and the melons left in charge of appellant. It is alleged that they were sold to the best advantage possible, and, after doing so and crediting the amount received, there was left due appellant on the freight and demurrage the sum of $165.58, the amount sued for. The appellee Floyd pleaded non est factum and denied partnership under oath, setting up specifically that, if the bills have indorsed thereon that Floyd guaranteed the freight charges, then that they had been altered or changed since he signed his name, and further pleads general denial.

There are three bills of lading to three separate cars, dated October 5, 1911, and upon appellant's form introduced in evidence. The bills of lading each show that the cars of melons were received from L. O. Floyd at McLean, Tex., consigned to D. W. Thomas, destination, Ft. Worth, Tex.; and there is indorsed on the face of each bill of lading in the handwriting of appellant's station agent at McLean, T. U. Salmon, "Charges guaranteed." The instruments recite that it is mutually agreed as to each party at any time interested in all or any of said property and of every service to be performed shall be subject to the conditions contained in the contract. L. O. Floyd signed each of the instruments as shipper and T. U. Salmon as authorized agent of the Chicago, Rock Island & Gulf Railway Company. The facts show the freight was not paid, and appellant called upon the consignee, D. W. Thomas, at Ft. Worth, Tex., the destination of the melons, and that he did not pay the same and assigned as a reason for not doing so that he did not have the money. Appellant then carried the cars of melons over

to Dallas and disposed of them and received therefor $90, and then sued D. W. Thomas, S. F. Biggers, and the appellee Floyd for the sum of $165.58, the balance due on the freight bills, after crediting the same with the amount obtained from the sale of the melons.

The testimony is practically uncontroverted that L. O. Floyd and Frank Cook raised on appellee's farm part of the melons shipped in the three cars; that previous to loading the cars they sold their melons to Biggers and delivered them to him by hauling them in wagons to the railroad, loading them in the cars; that Biggers also purchased melons from two other parties in the neighborhood and employed Cook to haul and load them into the cars with the melons purchased from Floyd and Cook, which made up the three cars. The testimony further shows that Cook and Floyd were paid for their melons by Biggers, through the bank in the town, and also for their services in hauling and loading the other melons purchased by Biggers. Floyd admitted signing the bills of lading but says that the words "charges guaranteed" were not on the bill when he signed them but were added thereafter. Salmon, the station agent, swears that he wrote the words before Floyd signed the bills and that he (Floyd) stood by and saw him do it. Floyd's testimony is to the effect that he asked Biggers, the purchaser of the melons, to whom he wanted them shipped, and Biggers told him that T. U. Salmon, the station agent, was a partner with him in the melons, and that he would understand to whom and where they should be shipped; that he told Salmon what Biggers had said. This statement was made to Salmon when they were shipping two cars previous to the three in question; that the three cars, for the freight of which suit is brought, were shipped in the same way, and that the station agent, Salmon, knew that they were Biggers' melons. The bills of lading were left with Salmon and no duplicate was given to Floyd, and that he did not know to whom they were shipped and did not know Thomas and had never heard of him previous to that time. He testifies that Salmon directed the loading, and it was done under his direction. He further testified that Salmon told him that he would see that Biggers got the bills of lading, and that he (Floyd) never sent Biggers the bills. There is no testimony in the record showing that Salmon denied the statements made by Floyd on this point, and Floyd's evidence is all there is in the record on the question. The witness had made arrangements with the bank to pay the freight on the melons before he sold to Biggers; after selling nothing more was done by him about any money to pay the freight.

Appellant assigns error on the third paragraph of the court's charge to the jury, which

is as follows: "If you find that said bills of lading were changed without the knowledge and consent of defendant L. O. Floyd, after he executed the same in a material manner, yet the said Floyd would be liable for the payment of the freight and other charges claimed by plaintiff unless plaintiff or its agent at the time of shipment knew that the melons shipped belonged to S. F. Biggers or S. F. Biggers and others; but if at the time of shipment said melons did not belong to defendant Floyd, and he had no interest in the same other than to make delivery thereof on the cars, and plaintiff or its agent knew such fact, then the said Floyd would not be liable merely on account of having delivered such melons for shipment, and as to such issue you will find, if you so believe, for defendant Floyd, unless you find for plaintiff under the preceding paragraph of this charge." In the preceding charge the court had instructed the jury that they would find for the plaintiff for the freight charges on three cars if they believed from the evidence that the words "charges guaranteed" were written in said contract at the time Floyd signed the same. Appellant presents the proposition under this assignment that the charge was erroneous because it in effect instructed the jury that Floyd would not be liable for the freight charges on these melons if the plaintiff's agent knew at the time of the shipment that the melons did not belong to Floyd and that he had no interest in them. Because if he delivered the melons to the railroad company as a shipper of them or agent of the shipper, an implied promise arose that he would pay the charges for their transportation, even though the agent of the railway company knew that he did not own them.

[1] If the bills of lading were not drawn "charges guaranteed" by Floyd when he executed them, and they were afterwards altered, then it would be, in our opinion, a material alteration and would be of no binding effect as to Floyd.

[2] There would be no express agreement to pay the freight, but the liability, if any, would arise upon an implied contract. The rule, as stated in 6 Cyc. p. 500, is: "In general the consignor with whom the contract of shipment is made is liable under the contract for the charges provided for therein. And this liability exists regardless of whether the consignor is the owner and irrespective of the failure of the carrier to collect from the consignee." The case of Keeling & Field v. Walter Connerly Co., 157 S. W. 232, cites this clause in Cyc., and also Baltimore, Ohio & S. W. Ry. Co. v. New Albany Box & Basket Co., 48 Ind. App. 64, 94 N. E. 906, 96 N. E. 28, and Railway Co. v. Lumber Co., 75 N. J. Law, 878, 69 Atl. 168. All the courts, federal and state, in so far as we know, have recognized this as the general rule, and in no court has the above rule been more clearly announced than by the Massa-

chusetts courts. Wooster v. Tarr, 8 Allen (Mass.) 270, 85 Am. Dec. 707. Yet that court, in the case of Union Freight Ry. Co. v. Winkley, 159 Mass. 133, 34 N. E. 91, 38 Am. St. Rep. 398, held substantially that the consignor, who is acting as the agent of the owner of the property, is not liable for the freight charges when the railway company knew, at the time of the shipment, the capacity in which he was acting. In discussing the question that court said: "A consignor of merchandise delivered to a railroad for transportation may be the owner and act for himself or may be an agent for the owner and act for him, and this may or may not be known to the railroad company. In the present case the railroad company knew the name and residence of the consignee." In discussing the question further, that court quoted from the case of Finn v. Western R. R. Co., 112 Mass. 524, 17 Am. Rep. 128, the following: "When carrying goods from seller to purchaser, if there is nothing in the relation of the several parties except what arises from the fact that the seller commits the goods to the carrier as the ordinary and convenient mode of transmission and delivery, in execution of the order or agreement of sale, the employment is by the seller; the contract of service is with him; and actions based upon that contract may, if they must not necessarily, be in the name of the consignor. If, however, the purchaser designates the carrier, making him his agent to deliver and transfer the goods, or if the sale is complete before delivery to the carrier, and the seller is made the agent of the purchaser in respect to the forwarding of them, a different implication would arise, and the contract of service might be held to be with the purchaser."

The court, in the Winkley Case, supra, commenting upon the above quotation, held that, while that was not a suit for the recovery of freight, yet the principles announced therein would apply, and held that in that state the vendor is presumed to make the contract in his own behalf for the transportation, but that such a presumption was a rebuttable one and may be disproved by evidence, and that the vendee may be held liable as the real principal in the contract. "But, whether the presumption be one way or the other, it is a matter of inference from the particular circumstance of the case, and the question which is always to be considered is the understanding of the parties." It was announced in that case that the court could not hold, as a matter of law, that the consignor made a contract on his own behalf, but there was some evidence that the understanding of all parties was that the consignee should pay the freight. In Wayland v. Moseley, 5 Ala. 430, 39 Am. Dec. 335, it is held that the shipper of goods, who is impliedly bound by the bill of lading to pay the freight, may show by

parol an agreement of the owner of the vessel to look to another for payment.

Without the words "charges guaranteed" written on the bill of lading, there is no express agreement on the part of Floyd to pay the freight. His liability at most would be a legal deduction from the fact of the shipment.

[3] While it is the rule in this state that the consignor is liable for the freight charges and that he may sue for injury to the property in his own name, should the title to the property be in another, we yet believe when the owner himself is the consignor, and the shipper is only his agent in the transaction, and that fact is known to the railway, that the owner, as the consignor, is liable for the freight charges, and that his agent should not be held therefor. The facts and circumstances in this case show that the delivery of the melons on board the cars completed the title thereto in Biggers, who bought and paid for them; that he had left instructions with the station agent to whom and where they should be shipped and instructed Floyd to the effect that the agent would understand to whom the shipment should be made, and the agent consigned them to a man appellee had never heard of and did not know. Appellee signed the bills of lading, and without any question the station agent knew he was acting only for Biggers in billing the cars. The appellant alleges in its petition that the appellee acted as the agent for Thomas and Biggers and for each of them.

[4] Ordinarily an agent is not personally responsible upon a contract made for his principal when the principal is known and the contract is for the principal. The consignor is presumed to be liable for the freight and a party at interest, but that presumption may be rebutted like any other. In this case Biggers was known by the station agent to be the owner, and evidently he had instructed him to consign the melons to Thomas at Ft. Worth, which was done. Appellant tried to collect the freight from the consignee, who under the law was the presumed owner of the melons, but could not. Floyd was merely an employé of Biggers and had parted with the title to the melons when they were placed on board the cars. These were all facts from which the jury could infer he in fact was not the consignor. The only thing which would make him liable would be "charges guaranteed" written on the bills of lading. Floyd swore he did not sign the bills with that indorsement thereon, and that it was placed there after he signed it. The jury found his statement true. The effect of this was to make him liable as a guarantor when under the facts he was not liable as a consignor, and therefore it was a material alteration and in effect, so far as he was concerned,

no contract. We believe the charge of the court, under the facts of this case, was correct.

The second and third assignments complain of the action of the court in refusing special charges to the effect, if Floyd executed the bills of lading, he would be liable for the freight charges and the demurrage, whether the phrase "charges guaranteed" was written in the bills of lading before or after their execution. We believe what has been said heretofore will dispose of these assignments, and they will therefore be overruled.

The case, we believe, was correctly submitted to the jury and will therefore be affirmed.