Albert Thomas, Co. Atty., Jack Varner, and Adams & McAlister, all of Nacogdoches, and A. A. Dawson, State's Atty., of Austin, for the State.

CHRISTIAN, J. The appeal is from an order denying bail. Appellant is charged by complaint with the offense of murder.

Appellant shot and killed John Noel Ainsworth. Prior to the killing appellant purchased a box of 45-caliber automatic cartridges on credit. Shortly before the homicide appellant and deceased were riding together in a truck. A witness for the state heard a shot fired and looked toward the truck. Appellant jumped from the truck and fired a shot. Deceased had two bullet wounds in the head, the entrance of one being on .the right side of the head near the eye and the other behind the right ear. The wound near the eye showed powder burns. The other did not. State's witnesses testified that appellant stated to them shortly after the homicide: "I had to; he was trying to cut me with a knife." Pursuant to a conversation the sheriff had with appellant, a knife belonging to deceased was found in a pair .of overalls at the home of appellant. Deceased had on heavy ducking backed gloves with gauntlets on them at the time he was killed. The wife of deceased testified that, when she last saw deceased on the day he was killed, he had in his possession a $1 bill and two dimes. After appellant was placed in jail, it was found that he had a $1 bill and two dimes. Shortly before the homicide appellant borrowed 50 cents from a friend. An examination of the effects of deceased disclosed that he had a dime in his pocket. At the time appellant was found with the money referred to, he was "shooting ·dice" with a prisoner in jail. It·was not shown whether he had won the money from the prisoner.

■ If appellant's statement relative to the homicide be rejected, we have an unexplained killing. It is true that a witness testified to having seen appellant fire a shot at the time deceased was killed, but no witness testified to the facts and circumstances leading up to the killing. Ex parte Cole, 89 Tex. Cr. R. 185, 230 S. W. 175; Ex parte Feray, 102 Tex. Cr. R. 645, 279 S. W. 470. The testimony before us does not make evident the fact that upon a trial a fair jury, considering such testimony, would inflict the death penalty.

■ The burden is on the state to show that accused is not entitled to bail; otherwise, he is entitled to bail as a matter of right. Article 1, § 11, Constitution of Texas; Ex parte Powell, 107 Tex. Cr. R. 648, 298 S. W. 575. There being a failure on the part of the state to discharge the burden resting upon it, we must hold that the court committed error in denying bail.

The judgment denying bail is reversed, and bail granted in the sum of $10,000.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals, and approved by the court.

■

## GALVESTON, H. & S. A. RY. CO. v. AMERICAN SALVAGE & SUPPLY CO. (No. 748.)

Court of Civil Appeals of Texas. Waco. Feb. 14, 1929.

Rehearing Denied March 21, 1929.

J. E. & B. L. Bradley and Mr. & Mrs. O. S. Bradley, all of Groesbeck, for appellant.

W. W. Mason, of Mexia, for appellee.

BARCUS, J. In March, 1924, B. L. Walkup, appellee, doing business under the name of American Salvage & Supply Company, delivered a carload of oil well supplies tó the agent of the Trinity & Brazos Valley Railway at Mexia, for shipment by freight to W. A. Peters at Luling, Tex., with the verbal understanding and agreement that he would not be liable theréfor, and that the consignee, Peters, would pay the freight charges. A standard bill of lading was issued, which stated that the freight charges were to be collected. When the car reached Luling over the line of appellant, its agent, through an error, collected freight from Peters on the car as containing 36,000 pounds, when he should have collected freight on 56,000 pounds, leaving $122 unpaid. After appellant discovered the shortage, it attempted to collect said amount from the consignee, Peters, but was unable to do so. It then instituted this suit in the justice court to recover said $122 from appellee as the consignor. Appellant alleged that, by reason of appellee having delivered said freight for shipment, it impliedly agreed and became obligated to pay the freight charges. It is an undisputed fact that the car of freight weighed 56,000 pounds, and that the agent of appellant, through his own negligence, only collected for 36,000 pounds, and that some one owes appellant for the remainder

thereof, to wit, $122. The trial in both the justice and county court was to the court, and resulted in a judgment being rendered for appellee. The pleadings of all the parties were oral in each of said courts.

■■ By its first proposition appellant contends the trial court erred in permitting the witness S. B. Werner, the agent of the Trinity & Brazos Valley Railway Company at Mexia, to testify that he was the local freight agent for said company, and that on the 12th day of March, 1924, appellee delivered to him as agent for said company a car of oil well supplies, with instructions to ship same to W. A. Peters at Luling, Tex., freight charges to be collected from Peters, and that he received instructions from B. L. Walkup, the owner of the American Salvage & Supply Company, to ship same to said Peters, freight charges to be collected, and that he accepted the shipment under those instructions. The objection made to said testimony was that it was an effort on the part of appellee to add to, modify, and vary the terms of the bill of lading under which the shipment was made, and was also contradictory of the agreed statement of facts under which the case was in part tried, and further that there was no pleading to support said testimony, and further because any contract appellee might have made with the agent of the Trinity & Brazos Valley Railway at Mexia would not be binding upon appellant as the delivering carrier. We overrule this proposition. We cannot agree with appellant's construction of the agreement under which the case was in part tried below. The agreement of the parties, as shown by the record, was that certain facts stated therein were true, and it then concludes with this paragraph:

"It is also agreed that the attached copy of the bill of lading is a true copy of the original bill issued and signed by the parties at the time of the shipment involved in the case. It is further agreed that either party may intioduce proof of any other pertinent issue involved in the case, but that no testimony shall be introduced to contradict the foregoing facts upon the trial."

The original bill of lading, instead of a copy, was actually attached to and made a part of said agreement. As we construe the above agreement, it is that the bill of lading attached was an exact copy of the one issued and signed. It does not purport to agree that the facts contained in the written bill of lading are true. Neither does it agree that the bill of lading contains the real contract of shipment. It goes no further than to agree that the bill of lading attached is an exact copy of the one issued and signed. As we understand appellee's position, he has never contended, and does not in this court contend that the bill of lading attached to said agreement is not an exact copy of the one

signed; his contention being, as we understand, that it did not and does not express or contain the real contract as made. All of the pleadings of the parties were oral. The only information in the record as to what the pleadings in the trial court were is a statement in the statement of facts filed that appellee, by having delivered the freight in question to the railway company for transportation, "impliedly agreed and became obligated and bound to pay plaintiff the regular established freight charges." It does not suggest that appellant was attempting to hold appellee under the written bill of lading.

There is nothing in the record that in any way indicates what the answer of appellee contained. It is a well-established rule that, in the absence of a showing as to what the pleadings were in a case originating in the justice court, where they may be oral, it will be presumed that they were sufficient to support the evidence admitted and the judgment as rendered by the trial court. Clonts v. Johnson, 116 Tex. 489, 294 S. W. 844. Under article 905 of the Revised Statutes, it is specifically provided that the agent of the initial carrier is agent for all connecting carriers who handle intrastate shipments, and by virtue of said statute, the agent of the Trinity & Brazos Valley Railway Company at Mexia was the agent of appellant, the delivering carrier, under the through bill of lading that was issued by him.

Appellant, by its second and third propositions, contends that the trial court was in error in refusing to render judgment for it, because under the law it has a right to collect freight charges from the party liable therefor, and that the collection of a less amount than is actually due under the rate fixed by the Railway Commission does not relieve the party liable for the unpaid portion, and because, in the absence of an agreement to the contrary, the consignor is liable for freight charges. As is stated in 10 C. J. p. 445:

"The consignor with whom the contract of shipment is made is primarily liable for the payment of the freight charges, whether he is the owner of the goods or not. A contract to pay freight is to be implied from the mere fact that the consignor has placed the goods with the carrier for the purpose of being carried to their destination. * * * However, it may be shown by parol that it was understood between the parties that the freight should be paid by the consignee or another."

Under the testimony as given by Werner, the agent of appellant, the car of freight in question was shipped to W. A. Peters at Luling, Tex., with instructions to collect freight charges from Peters, and same was accepted by said agent from appellee under said instructions. There is no evidence showing that the freight belonged to appellee, or that he was in any way interested therein, or that he had any connection therewith, except to deliver same to the initial carrier, to be by it transported to the consignee at Luling. Under article 905, Revised Statutes, the agent of the initial carrier, being agent for all the connecting carriers, had the right to make the contract for the shipment of the freight and look to the consignee alone to pay the freight charges.

In the case of Chicago, R. I. & G. Ry. Co. v. Floyd (Tex. Civ. App.) 161 S. W. 955, it was held, under facts very similar to those involved in this litigation, that the consignor was not liable for the freight charges. In Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900, Mr. Justice Brandeis, after stating that ordinarily the consignor was liable for the freight, stated: "It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability." In said case the court held that under the facts thereof the consignor was not liable for the unpaid freight.

We have examined each of appellant's assignments of error and propositions relating thereto, and same are overruled. The judgment of the trial court is affirmed.